THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* IKE ISRAEL, Plaintiff in Error.

*Opinion filed October 27, 1915.*

1. CRIMINAL LAW—*what constitutes duplicity in criminal pleading.* To constitute duplicity in criminal pleading there must be joined in the same count different, separate and distinct crimes committed at different times.

2. SAME—*what constitutes a single offense.* Where goods of different kinds and belonging to different owners are stolen at the same time and from the same place the crime is but a single offense against the public although there may be as many trespasses as there are separate owners; and this same rule applies to buying or receiving stolen property knowing it to be stolen.

3. SAME—*what may be omitted in an indictment for receiving stolen goods.* Under section 239 of the Criminal Code an indictment for receiving stolen goods need not state the name of the thief and the time and place where the goods were stolen.

4. SAME—*what will not be assumed in prosecution for receiving stolen goods.* In a prosecution for receiving stolen goods it will not be assumed that the articles were bought and received at different times and at different places, where the same does not appear on the face of the indictment.

5. SAME—*what necessary to sustain conviction on the testimony of a thief.* To sustain a conviction by the evidence of a witness who is a confessed thief and who has been convicted repeatedly of infamous crimes, the evidence in the record, considered as a whole, should leave no reasonable doubt of defendant's guilt and the trial should be conducted without prejudicial error.

6. SAME—*defendant is entitled to instruction as to presumption of innocence.* In every case where the material facts are in controversy the defendant is absolutely entitled to have the jury properly instructed as to the law on the presumption of innocence, and such instruction should not be refused because a part of it is a repetition of the same principles stated in other instructions.

7. INSTRUCTIONS—*what will make an instruction objectionable.* An instruction is objectionable which contains mere statements of abstract propositions of law on other subjects not specially applied to the case and which assumes the truth of the facts on which they are based.

8. WITNESSES—*a witness cannot be impeached on immaterial matter.* A witness cannot be impeached upon immaterial matter, and it is immaterial whether one accused of receiving stolen goods had purchased junk from the thief previous to the larceny involved in the prosecution.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. ADELOR J. PETIT, Judge, presiding.

NORTHUP, ARNOLD & FAIRBANK, and LOUIS GREENBERG, for plaintiff in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, ARTHUR R. ROY, and FRANCIS E. HINCKLEY, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

At the July term, 1913, of the criminal court of Cook county an indictment of two counts was returned against plaintiff in error, Ike Israel, herein designated as the defendant. The first count charged a larceny of the property in question. The second count charged, in substance, that on January 15, 1913, in Cook county, Illinois, the defendant feloniously and unjustly, for his own gain and to prevent the owners from again possessing their property, did buy, receive and aid in concealing 263 pounds of brass, of the value of fourteen cents each pound, and other metals, (describing them and valuing them,) of the goods and chattels of Sam Cohen and Louis Cohen, partners do-

ing business as Cohen Bros., then lately before feloniously stolen, taken and carried away from the said Sam Cohen and Louis Cohen by a certain evil-disposed person, and 1900 pounds of brass, of the value of thirteen cents each pound, and other metals, (describing them and valuing them,) of the goods and chattels of Solomon Silverstein, then lately before feloniously stolen, taken and carried away from the said Solomon Silverstein by a certain evil-disposed person, the said Ike Israel then and there well knowing the said goods and chattels to have been feloniously stolen, taken and carried away, contrary to the statute and against the peace and dignity of the same People, etc. The defendant was tried on a plea of not guilty, and the jury found him "guilty of receiving stolen property knowing the property to be stolen," in manner and form as charged in the indictment, and found the value of the property so received to be $70. No motion was made to quash the indictment. After motions for new trial and in arrest of judgment were overruled defendant was sentenced on the verdict, and he has sued out a writ of error from this court.

The undisputed facts upon which the indictment was based are, that Cohen Bros. and Silverstein, during January, 1913, were separately engaged in buying and selling large quantities of junk, consisting of copper, brass and other metals, and separately occupied one-half of the floors of the two-story brick building at 1647 West Polk street, Chicago, as a warehouse for said business. On the night of January 14, 1913, Jacob Bosky and Joe Greeny forcibly broke and entered said warehouse and feloniously stole and carried away large quantities of said junk, some of which belonged to Cohen Bros. and the remainder thereof to Silverstein. They also at the same time stole Cohen Bros.' wagon and Silverstein's horse, with which they hauled away the stolen junk to a junk dealer near Elston avenue named Mintz and there unloaded it, and disposed of the

horse and wagon by abandoning it near Mintz's shop. Mintz refused to buy the junk because he thought it was stolen. They then employed a teamster, Harry Ackerman, for $6, to haul it to a second junk dealer not far away, who refused to buy it for the same reason. After agreeing to pay Ackerman $9 more, they induced him to haul it to the defendant's junk shop, at 636 Orleans street, where they arrived about nine o'clock A. M., January 15, and unloaded it in defendant's shop.

The defendant contends that the second count of the indictment is fatally defective, and that the judgment should have been arrested because that count charges two separate offenses, which should have been included in separate counts; and that both counts are fatally defective for the further reason that each count is lacking in material averments and cannot be aided by averments in the other count.

Where goods belonging to different owners are stolen from a building at one and the same time it constitutes a single offense against the public. To constitute duplicity in criminal pleading there must be joined in the same count different, separate and distinct crimes committed at different times. Where the offense is one act, fully completed at the same time and place, it is but one crime, however many different kinds of property may be stolen. There is no good reason why such an act may be said to constitute more than one crime because there are two or more separate owners of the property stolen. A crime is an offense committed against the public and not merely against a private citizen. Where articles of property are stolen at one and the same time and at the same place, from several separate owners, there are as many wrongs committed against private citizens as there are separate owners, but they are trespasses when so considered. As against the public such an act is but one offense or crime. To hold otherwise, a thief proven guilty of grand larceny might escape punishment therefor in the penitentiary by the split-

ting up of the State's cause of action into two or more separate suits for petit larceny, or he might be convicted two or more times for grand larceny for but one act or offense if the property stolen from each individual should be of sufficient value. (*Lorton* v. *State,* 7 Mo. 55; *Nichols* v. *Commonwealth,* 78 Ky. 180; *State* v. *Larson,* 85 Iowa, 659; *People* v. *Johnson,* 81 Mich. 573; *State* v. *Newton,* 42 Vt. 537; *Furnace* v. *State,* 153 Ind. 93; *State* v. *Mjelde,* 29 Mont. 490; *State* v. *Mickel,* 23 Utah, 507; *Wilson* v. *State,* 45 Texas, 76; *Fulmer* v. *Commonwealth,* 91 Pa. St. 503;. *Waters* v. *People,* 104 Ill. 544.) In *State* v. *Nelson,* 29 Me. 329, and in *Smith* v. *State,* 59 Ohio St. 350, it is held that the same rules apply for buying or receiving stolen property knowing it to be stolen, and we know of no reason why the same rule should not apply under our statute. In *Freeland* v. *People,* 16 Ill. 380, it was said: "In the same act of feloniously taking a quantity of goods, the party may, in law, be guilty of as many crimes as there are separate owners of the goods stolen and may be punished as for so many distinct larcenies. If a person steals a horse, saddle and bridle at the same time, by the same act he may commit, in law, three several larcenies." The same language was quoted in the case of *Nagel* v. *People,* 229 Ill. 598, but the real question for decision in the instant case was not up for decision in those cases and the language there used may be regarded as mere dictum. The doctrine announced in those quotations was, in part at least, expressly overruled in the case of *Waters* v. *People, supra,* where it was said (p. 547): "When it is but one act, fully completed at the same time, there can be no duplicity, however many or different kinds or articles of property are stolen, and it being but a single larceny, it is not error to so charge it in one count in the indictment."

Under section 239 of our Criminal Code, (Hurd's Stat. 1911, p. 805,) in an indictment for receiving stolen goods it is not necessary to state the name of the thief and the

time and place where the goods were stolen, and it is not necessary to aver more definitely than was done in this indictment the time and place where the stolen property was bought and received by the defendant. It will not be assumed that the articles were bought and received at different times and at different places where the same does not appear on the face of the indictment. The indictment charges but a single offense and is good, after verdict at least, and the evidence offered under it tended to prove but a single offense.

The State contends that the defendant bought the entire load of junk of Bosky and Greeny and paid them $70 knowing it to be stolen, while the defendant claims that he was away from his shop when Bosky and Greeny brought the junk and unloaded it there, and that when he returned he refused to buy the junk and did not buy it, and that he ordered them to take it away, and that they did take it away from his premises with a horse and wagon, except a few pieces that fell out of the old gunny sacks in which it was contained, and that Bosky paid Frank Colmer for helping him to re-load it. The defendant's contention is supported *in toto* by his own testimony and by the evidence of the witnesses Louis Israel, his brother, Frank Colmer, a teamster of the Taft-Short Contracting Company, and Fred Bendel, engaged in the motor transportation business, the last two of whom are apparently disinterested witnesses and in no way related to the defendant. The only positive testimony supporting the State's claim was that of Bosky, its chief witness, who previous to the burglary and larceny disclosed in this case had been convicted a number of times for the infamous offense of grand larceny. He also admitted that he had previously stated out of court, and that he had testified in court, that he did not sell the junk in question to the defendant, and his own evidence shows he was very bitter towards the defendant for not standing by him and aiding him while he was being prose-

269 — 19

cuted. His testimony, however, did support the State's contention, and if true the defendant was also an accessory to the burglary and larceny of the goods in question. His evidence as to the defendant's buying the junk in question is corroborated to some extent by the evidence of Silverstein, Ackerman and two police officers, none of whom were present when it is claimed the junk was bought by the defendant. Silverstein was present when the defendant's premises were searched the second time, and identified certain automobile copper castings that were found covered up with other junk in barrels on defendant's premises, which he testified belonged to him. The police officers testified that the first time they searched his premises he told them that he did not buy any junk on the morning of January 15, and one of them testified that he told them no one had brought any there that morning. They also testified that the junk identified by Silverstein as his own was found covered up in barrels with metal shavings and other junk. Ackerman testified that Bosky and Greeny paid him $10 at a saloon near the defendant's shop and told him to wait there until they collected the money for the junk and they would pay him the balance due him; that shortly afterwards he followed them to the defendant's shop and told him that Bosky and Greeny owed him $5 for the hauling, and that the defendant told him they were gone and had gone out of his back way. The defendant testified that the six pieces of copper identified by Silverstein belonged to him and not to Silverstein, and contradicted the police officer who testified that the defendant made the statement that no one brought any junk to his place on January 15, and also the evidence of Ackerman.

While it is true that a defendant may be convicted by the evidence of a witness who is a confessed thief and who has been convicted of an infamous crime repeatedly, yet to sustain such a conviction the evidence in the record, when considered as a whole, should leave no reasonable doubt of

his guilt and the trial should be conducted without preju-
dicial error. The verdict of guilty in this case cannot be
sustained without a finding, not only that the testimony of
Bosky against the defendant is true, but also that the tes-
timony of the defendant and his brother and his other two
witnesses, the last three of whom were directly contradicted
by no one save Bosky, was false and that all four of them
were perjurers. The only other evidence inconsistent with
the testimony of defendant's three witnesses aforesaid is
that of Silverstein in identifying six pieces of the copper
junk as his own that were found in the defendant's pos-
session, and taking his testimony as absolutely true, the
defendant might still be innocent and have obtained the cop-
per innocently from some other source. We are therefore
forced to the conclusion that the evidence in this record
does not prove, beyond a reasonable doubt, that the defend-
ant is guilty as charged.

In every case where the material facts are in serious
controversy, as in this case, the defendant is entitled to have
the jury properly instructed as to the law on the presump-
tion of innocence, when such law is properly presented to
the court by written instructions to be given to the jury.
The court committed error in refusing to give defendant's
offered instruction No. 5, which is one of the usual stock
instructions upon the presumption of innocence, and there
is no contention by the State that it is objectionable in any
way except that a part of it bearing on other subjects was a
repetition of the same principles stated in other instructions.
The only instruction given by the court bearing on the law
relating to the presumption of innocence is the People's in-
struction No. 7, "that the rule of law which clothes every
person accused of crime with the presumption of innocence
and imposes upon the State the burden of establishing his
guilt beyond a reasonable doubt is not intended to aid any-
one who is, in fact, guilty of crime to escape, but is a
humane provision of the law, intended, as far as human

agencies can, to prevent an innocent person from being convicted." The defendant's refused instruction No. 3. also contained a correct statement of the law on the presumption of innocence. The instruction, however, was properly refused because it was vitiated by the addition thereto of this further instruction: "In order to convict him of the crime charged in the indictment every material fact necessary to constitute such crime must be proved beyond a reasonable doubt, and if the jury entertain a reasonable doubt upon a single fact or element necessary to constitute the crime, then it is your duty to give the prisoner the benefit of the doubt and acquit him." *Williams* v. *People,* 166 Ill. 132.

The court was warranted in refusing to give the defendant's offered instruction No. 2 because it did not correctly define the term "reasonable doubt." (*Little* v. *People,* 157 Ill. 153.) It was also objectionable because it contained mere statements of abstract propositions of law on other subjects not specially applied to the case, making the instruction argumentative, and objectionable as assuming the truth of the facts on which they were based.

The court also properly gave instructions on circumstantial evidence because there was sufficient of such evidence in the record on which to base them.

The last assignment of error is untenable for the reason that a witness cannot be impeached upon immaterial matter, and it was immaterial whether Bosky knew Mintz or had sold him junk previous to the larceny in question.

For the reasons above indicated the court erred in not granting a new trial. The judgment of the court is reversed and the cause remanded.

                           *Reversed and remanded.*