(No. 21435.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOSEPH PERRELLO *et al.* Plaintiffs in Error.

*Opinion filed October 22, 1932.*

FRANK A. McDONNELL, and S. B. McDONNELL, JR., (ELWYN E. LONG, of counsel,) for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, ASHBEL V. SMITH, State's Attorney, and J. J. NEIGER, (WILFRED HALL, of counsel,) for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiffs in error, Joseph Perrello, Nick Meantanis, Paul Ross (otherwise known as Paul Rossi) and Frank Tuffano (hereinafter referred to as the defendants) were indicted by a grand jury of Lake county. The indictment contains thirteen counts. The first count charges the armed robbery of William Mitchell on November 21, 1931. The second, third, fourth, fifth, sixth, seventh and eighth counts charge the armed robbery of Leslie Wheeler, Ralph J. Hines, Helen Bowen Blair, Margaret Cudahy, Violet Wheeler, Louise Phelps and Ginerva Mitchell, respectively. The ninth count charges the armed robbery of all of said persons. The tenth count charges the burglary of the dwelling house of William Mitchell with force. The eleventh count charges the burglary of the dwelling house without force. The twelfth count charges a burglarious entry with force, and the thirteenth count charges a burglarious entry without force. All charges are laid on the same date. The cause was tried by a jury, and the defendants were found guilty of robbery while armed with dangerous weapons in manner and form as charged in the indictment and each was sentenced to the penitentiary. The cause comes to this court by writ of error prosecuted by the defendants.

The facts as developed at the trial are substantially as follows: About half-past ten o'clock on the night of November 21, 1931, William Metzger, a watchman on the estate of William Mitchell, at Lake Forest, in Lake county, saw two men enter the grounds and he walked toward them. The two men drew guns and told Metzger to "stick them

up" and to get into the garage. Metzger obeyed. William Matheson, chauffeur for Mitchell, lived in the garage with his wife and two children. On orders of the two men Metzger persuaded Matheson and his wife to leave their apartment and all of them went to the kitchen door of the main house. The maids were in the back part of the house, and having been told it was a hold-up were ordered to go to the front of the house. Guarded by the two men, the maids, Metzger and Mr. and Mrs. Matheson went through the kitchen, butler's pantry and dining room to the front hall, where they saw three more men. While going into the main room Matheson slipped away, ran up-stairs and telephoned the police at Lake Forest. During these occurrences Mr. and Mrs. Mitchell were entertaining in their living room the persons alleged by the indictment to have been robbed. Some of them were playing bridge and others were playing backgammon. The living room was forty feet long by twenty-five feet wide and had two entrances—one through the porch and one through the hall, into which the front door opened. Mrs. Mitchell saw two men about ten feet inside the room with handkerchiefs on their faces and guns in their hands, who said, "This is a stick-up and we want your money and jewelry. Go to the fireplace, all of you." A third man came into the room. He was armed and had a handkerchief up to his face. The guests and servants were made to face the wall and the robbers kept telling them to keep their hands up. The armed men then said, "Throw your jewelry and money on the table." Mrs. Mitchell heard a "banging" up-stairs, and shortly after a big man came into the living room and asked, "Who owns this house?" Mrs. Mitchell said she did, and the man said, "I want you to come up-stairs with me." As she went up-stairs the man walked at her side and two men walked behind her. All three of them had guns. She showed them her jewel case and they took the jewelry out. While doing so the face of the man who was taking it became uncov-

ered. He was not among the defendants on trial. The men demanded Mrs. Mitchell's money, but failing to obtain it the three men and Mrs. Mitchell went down-stairs again. She saw a policeman standing at the front door. As she came into the living room, Hines, a guest, ordered everybody to get down, and she got behind a piece of furniture. There were a good many shots fired. The hold-up men ran and escaped through a south door. An overcoat was found the next morning on the grounds of the Mitchell estate, near the residence. In the pockets of the coat was a part of the stolen jewelry. The name of the owner of the coat was in the lining. A hat was also found near by. The defendants were identified by fifteen different persons. Some of the witnesses identified only one of them while others identified more than one. A police officer identified all four of them.

The court overruled motions of the defendants to quash the indictment and other motions to require the State to elect upon which count or counts it would proceed. It is the contention of the defendants that the indictment charges at least eight separate and distinct felonies and that they cannot be joined either in one or several counts of the same indictment. In *People* v. *Israel*, 269 Ill. 284, it is said: "Where goods belonging to different owners are stolen from a building at one and the same time it constitutes a single offense against the public. To constitute duplicity in criminal pleading there must be joined in the same count different, separate and distinct crimes committed at different times. Where the offense is one act, fully completed at the same time and place, it is but one crime, however many different kinds of property may be stolen. There is no good reason why such an act may be said to constitute more than one crime because there are two or more separate owners of the property stolen. A crime is an offense committed against the public and not merely against a private citizen. Where articles of property are stolen at one

and the same time and at the same place, from several separate owners, there are as many wrongs committed against private citizens as there are separate owners. * * * As against the public such an act is but one offense or crime. To hold otherwise, a thief proven guilty of grand larceny might escape punishment therefor in the penitentiary by the splitting up of the State's cause of action into two or more separate suits for petit larceny, or he might be convicted two or more times for grand larceny for but one act or offense if the property stolen from each individual should be of sufficient value."

A defendant cannot insist that he shall not be put upon trial on an indictment containing counts charging separate felonies unless it affirmatively appears that they are not parts of one and the same transaction but are separate and distinct in law and in fact. (*West* v. *People,* 137 Ill. 189; *People* v. *Gray,* 251 id. 431.) A prosecutor is required to elect only when the offenses charged in the different counts are actually distinct from each other and do not arise out of the same transaction. (*People* v. *Bernstein,* 250 Ill. 63.) The charge of two different offenses growing out of the same transaction may be embraced in different counts of the same indictment. (*People* v. *Daugherty,* 246 Ill. 458; *Schintz* v. *People,* 178 id. 320.) In *Waters* v. *People,* 104 Ill. 544, the defendant was charged in one count with the larceny of a horse. The second count charged him with the larceny of "one horse, one buggy and one harness," the property of the same person. It was there urged that the second count was double and bad for duplicity. This court said: "In this case there were not two crimes. It was one united, continuous and indivisible act, consisting of the larceny of one horse, one buggy and one harness. It would be unheard of to permit the People to split up such a larceny into two or more separate crimes and to allow as many different and separate convictions. To be duplicity there must be joined in the same count

different, separate and distinct crimes committed at different times. When it is but one act, fully completed at the same time, there can be no duplicity, however many or different kinds or articles of property are stolen, and it being but a single larceny it is not error to so charge it in one count in the indictment. Had the horse been stolen at one time and the buggy and harness at another then there would be force in the argument, because there would have been two separate and complete crimes, but by no process of reasoning can there be held to be more than one crime in this case."

During the progress of the trial an attempt was made by the prosecution to show that one Deonardi was in the company of two of the defendants less than two weeks before the robbery charged in the indictment. It appears from the record that Deonardi's name was in the lining of the coat found on the Mitchell estate the morning after the robbery. A police officer testified that he saw defendants Frank Tuffano and Joe Perrello in the company of Deonardi in the police station on November 8, 1931. No attempt was made to show that the men were under arrest or accused of another crime. The testimony was improper and was stricken on motion of the defendants. The jury was instructed to disregard it. The guilt of the defendants was conclusively proven, and we are of the opinion that upon another trial a different verdict would not be reached if the testimony complained of were omitted. It is well settled that under such circumstances an error in the admission of evidence will not vitiate the judgment. *People* v. *Weir,* 295 Ill. 268.

Finding no reversible error in the record, the judgment of the trial court is affirmed.  *Judgment affirmed.*