STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. WILLIAM HOAG, DEFENDANT-APPELLANT.

Argued March 21, 1956—Decided May 14, 1956.

*Mr. Robert E. Knowlton,* of the Iowa Bar, argued the cause for appellant (*Mr. George Warren,* attorney).

*Mr. William J. Arnold,* Assistant Bergen County Prosecutor, argued the cause for the State (*Mr. Guy W. Calissi,* Bergen County Prosecutor, attorney; *Mr. William C. Brudnick,* Special Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

WACHENFELD, J. At about 3 P. M. in the afternoon of September 20, 1950, three or four patrons, one of whom was Elmer S. Yager, were seated at the bar of Gay's Tavern on Bergen Boulevard in Fairview, New Jersey, sipping beer and observing a telecast of a baseball game. The tranquility of that scene was interrupted by three men, each carrying a gun, entering through the front door of the tavern. One of them brusquely announced: "This is a stick-up, everybody line up against the wall." The patrons, together with the owner of the tavern, proceeded to do as they were told, accelerated by slaps and shoves administered by the stick-up men. Once lined up against the wall, each was relieved of his valuables and money and then taken into the kitchen. They were placed upon the floor, their hands and legs being bound. Their mission accomplished, the robbers left the tavern and made a get-away unimpeded.

The not uncommon factual pattern recited above gives rise, on this appeal, to an arresting question of law growing

out of legal proceedings subsequently taken against the defendant, who the jury below was satisfied beyond a reasonable doubt was one of the robbers.

Within a matter of weeks after the robbery, the victims were shown photographs of criminals known to have engaged in activities similar to those described above. Two of the victims identified the photograph of one man, the present defendant, as one who had engaged in the robbery. About a year later, the defendant was apprehended by the New York police authorities for another offense and returned for prosecution here.

Subsequently, the Bergen County grand jury returned three indictments, each containing two counts, against the defendant, the first count being for armed robbery of a specific individual and the second count for carrying a concealed weapon. For some reason, which does not appear in the record before us, no indictment was returned against the defendant for having committed armed robbery upon Elmer S. Yager; the victims named in the indictments were limited to Patsy Cascio, Louis Capezzuto, and Charles Galiardo.

On May 26 and 27, 1952, trial was had on the three indictments, and each of the three indictment-victims, Cascio, Capezzuto and Galiardo, was called to the witness chair by the State. However, on the stand they either disclaimed ability to identify the defendant or positively identified him as not having been one of the robbers. Each of these three witnesses recanted his prior positive identification of the defendant made through the use of his photograph. The State was able to produce only one witness, Yager, who gave an unqualified identification of the defendant at the trial.

The defense was an alibi, but it was unsupported by any witness other than the defendant.

The trial court, after dismissing the concealed weapon counts of the three indictments, submitted the case to the jury, which returned a verdict of not guilty.

Probably stimulated by the trial judge's comment as to the obvious guilt of the defendant, referred to in the appellant's brief, the Bergen County grand jury, within a matter of days after the acquittal, returned a two-count indictment against the defendant charging him, in the first count, with the commission of armed robbery upon Elmer S. Yager, and in the second count with carrying a concealed weapon in violation of *N. J. S. A.* 2:176–41 (now *N. J. S.* 2*A*:151–41).

However, before the new indictment could be moved for trial, the defendant was returned to New York for incarceration for an offense committed within that jurisdiction. As a result, the trial of the Yager indictment did not get under way until October 18, 1954.

At the second trial, the State offered only one witness, Yager, who again positively identified the defendant as one of the three robbers who had entered the tavern on September 20, 1950 and held him up. After the defense had attacked Yager's ability to recall places and incidents occurring more than four years previously, on redirect examination he was asked how he could remember the defendant on the afternoon of September 20, 1950. He replied impressively: "Anybody would have a gun stuck into them, they would sure remember the fellow's face, directly in front."

The other three victims of the robbery testified on behalf of the defendant at the second trial. Their testimony was similar to that which they had given at the first trial. The defendant took the stand in his own behalf and again offered an alibi defense. No witnesses were offered to support this defense, he having testified they were unavailable by reason of death or unknown whereabouts.

The jury returned a verdict of guilty on both counts of the indictment. Following sentencing, the concealed weapon count was ordered dismissed by the trial judge.

The defendant was permitted to appeal to the Appellate Division as an indigent person from the judgment of conviction on the first count of the indictment. As on the appeal to this court, no question was there raised as to the

defendant's guilt or innocence, the appeal being limited solely to the question whether the second trial, on the Yager indictment, violated our constitutional prohibition against double jeopardy, a defense which the defendant had also raised at the trial. The Appellate Division affirmed, *State v. Hoag,* 35 *N. J. Super.* 555 (*App. Div.* 1955), and the defendant appealed to us as of right, see *R. R.* 1:2–1(*a*), and as an indigent person pursuant to *R. R.* 1:2–7. The appeal was originally considered without oral argument; subsequently we assigned counsel to the defendant. New briefs were presented and counsel argued the cause before us at length.

The constitutional question is advanced here by the defendant in the following form: "The basic issue in this case is whether the State may subject an individual to a separate trial for the robbery of each victim when the robbery of all was at the same time and at the same place."

The New Jersey Constitution of 1947 states the prohibition against double jeopardy in the same language as did the 1844 Constitution:

> "No person shall, after acquittal, be tried for the same offense." *N. J. Constitution, Art.* I, *par.* 11. See *N. J. Constitution of* 1844, *Art.* I, *par.* 10.

The difficulty, of course, lies in ascertaining what is meant by the constitutional concept of "the same offense," acquittal, or conviction, of which will preclude a second trial. The question has arisen in many contexts, as, for example, where a person accused of a minor offense is acquitted and he is again charged on the same facts in a more aggravated form. See *State v. Labato,* 7 *N. J.* 137, 146 (1951); *State v. Shoopman,* 11 *N. J.* 333 (1953); *State v. Cooper,* 13 *N. J. L.* 361 (*Sup. Ct.* 1833); *State v. Mowser,* 92 *N. J. L.* 474 (*E. & A.* 1919). Double jeopardy may also be called into play where a single act involves multiple consequences, usually the consequences being experienced by a number of individuals. See *State v. Cosgrove,* 103 *N. J. L.* 412

(*E. & A.* 1927); *State v. Pennsylvania R. R. Co.*, 9 *N. J.* 194 (1952).

The test most widely employed in this jurisdiction to resolve the double jeopardy question in such circumstances is whether the evidence necessary to sustain the second indictment would have been sufficient to secure a legal conviction on the first. *State v. DiGiosia*, 3 *N. J.* 413, 419 (1950); *State v. Labato, supra*, 7 *N. J.*, at *page* 144; *State v. Shoopman, supra*, 11 *N. J.*, at *page* 335.

The defendant acknowledges that the application of the "same evidence" test results in a denial of the alleged double jeopardy violation in the case *sub judice*. For the evidence needed to support the Yager indictment obviously would not have been sufficient to secure conviction upon the three earlier indictments, inasmuch as the latter indictments charged a forcible taking of *different* property from three *different* individuals.

Nevertheless, it is urged the present factual pattern falls within the "single act" category, and despite the fact several persons were robbed, but a single "offense," in the constitutional sense, was committed by the defendant for which he may not be retried. It is said the "same evidence" test is modified in this jurisdiction where there are multiple victims of a "single act." See *State v. Cosgrove, supra*; *State v. Pennsylvania R. R. Co., supra*.

However, we cannot concede that the defendant may avail himself of the plea in this case under any recognized concept of double jeopardy. For the fact remains that there was not but a "single act" committed by this defendant which simultaneously, and without more, affected several individuals. At the very least, putting aside the more subjective element of placing each of the victims in fear, the crime with which the defendant was charged in each indictment required the commission of a separate and independent act with respect to each victim, *i. e.*, the forcible taking of the victim's property. Additionally, to be precise, it was in fact committed at a different time, either prior or subsequent to the other independent acts charged in the other indictments. As was

said in *People v. Lagomarsino*, 97 *Cal. App. 2d* 92, 217 *P. 2d* 124, 129 (*D. Ct. App.* 1950):

"Whatever conflict may exist in the cases involving offenses against property, when we come to offenses against persons, there is more unanimity. Particularly is this true of robbery cases, the offenses here involved. The majority, and certainly the better rule, is that there is a separate offense committed against each person robbed. Obviously, a robbery of several persons, where property is removed from each person, involves a separate act and a separate intent for each victim."

See also *People v. Rodgers*, 102 *Misc.* 437, 170 *N. Y. S.* 86 (*Sup. Ct.* 1918), affirmed 184 *App. Div.* 461, 171 *N. Y. S.* 451 (*App. Div.* 1918), affirmed 226 *N. Y.* 671, 123 *N. E.* 882 (*Ct. App.* 1919).

The subject matter has evoked many divergent and conflicting reactions and has engendered a host of comment. See, *e. g.*, 65 *Yale L. J.* 339 (1956); *Lugar, "Criminal Law, Double Jeopardy and Res Judicata,"* 39 *Iowa L. Rev.* 317 (1954). Nevertheless, Judge Jayne, below, in two short paragraphs succintly stated and applied the basic reasoning and philosophy of the New Jersey decisions to the case *sub judice.* His appraisal, which coincides with our own views, was (35 *N. J. Super.*, at *page* 560):

"Neither the identical act nor the same evidence norms avail the defendant in the present case. Conceivably the one act of brandishing a pistol in a menacing manner might have simultaneously placed Cascio, Capezzuto, Galiardo, and Yager in a state of fear and intimidation, but to constitute robbery, the act must necessarily be complemented by the additional and successive act of taking 'from the person of another, money or personal goods and chattels, * * *.'

At his former trial the defendant was not charged with placing Yager in fear and taking any money or personal property from him. Surely evidence that the defendant robbed Yager would not be necessary to establish his guilt of robbing Cascio, Capezzuto, and Galiardo. The robbing of Yager was not an essential ingredient or legally integral part of the alleged offenses of robbing the other three."

The conclusion finds support in an imposing array of authority there cited.

Next, the defendant contends that even if the plea of double jeopardy does not preclude a second prosecution in the instant case, nevertheless the jury's verdict of not guilty in the first trial prevents relitigation of any fact encompassed by that verdict under the principle of *res judicata.* See *Sealfon v. U. S.*, 332 *U. S.* 575, 68 *S. Ct.* 237, 92 *L. Ed.* 180 (1948); *U. S. v. Oppenheimer*, 242 *U. S.* 85, 37 *S. Ct.* 68, 61 *L. Ed.* 161 (1916); *Harris v. State*, 193 *Ga.* 109, 17 *S. E. 2d* 573, 147 *A. L. R.* 980 (*Sup. Ct.* 1941). The only controverted issue of fact in the first trial, it is said, was the identity of the defendant as one of the robbers who held up Gay's Tavern, and since the first jury acquitted the defendant upon the first three indictments, the State cannot relitigate the issue of the defendant's identity as the man who held up Yager, inasmuch as he was robbed at the same time and place as the other three.

Actually, it is not the doctrine of *res judicata* which is invoked here but that of collateral estoppel. For, as we have already outlined, the offenses charged in the several indictments constitute separate and distinct crimes, and while the parties may be the same, the State's cause of action under each indictment is a different one. That being the case, the State is precluded only from relitigating those facts which were actually found by the first verdict. *Restatement, Judgments*, § 68; *Scott, "Collateral Estoppel by Judgment,"* 56 *Harv. L. Rev.* 1, 10 (1942).

The first three indictments charged the defendant with the forcible taking of property from three individuals, Cascio, Capezzuto and Galiardo, by placing them in fear. The fourth indictment, on the other hand, alleged that the defendant "did willfully, feloniously and forcibly take from the person of one Elmer S. Yager * * * one wallet and one wrist watch of the value of $50 * * * by putting him in fear." Thus, in so far as the issues were framed by the indictments, the jury's acquittal on the first three was not inherently inconsistent with the guilty verdict on the last indictment.

Nor was the defendant's plea of alibi necessarily established by the first jury's general verdict of not guilty. There is nothing to show that the jury did not acquit the defendant on some other ground or because of a general insufficiency in the State's proof. *People v. Rodgers, supra; State v. Barton,* 5 *Wash. 2d* 234, 105 *P. 2d* 63 (*Sup. Ct.* 1940). Obviously, the trial of the first three indictments involved several questions, not just the defendant's identity, and there is no way of knowing upon which question the jury's verdict turned. Since it does not appear whether the acquittal was based on the determination of the question as to which the estoppel is sought in the second trial, the first verdict is not conclusive in the second trial. See *Restatement, Judgments,* § 68, *Comment* 1.

*State v. Barton, supra,* is factually very close to the case at hand. There, the defendant was first prosecuted for the crime of first-degree murder, the State alleging the murder was committed during the course of a robbery. Following his acquittal, the State prosecuted for robbery on the same acts as were relied upon in the murder prosecution. In disposing of the claim that the judgment of acquittal in the murder prosecution was *res judicata* in the robbery prosecution, the court said (105 *P. 2d,* at *page* 67):

> "In the murder prosecution, the appellant's defense of alibi and the various related matters of fact set out in detail in his amended special plea were not actually or necessarily adjudicated, nor can it be said that the issues were limited, as appellant contends. Every material allegation of the information was placed in issue by the appellant's plea of not guilty, and the state had the burden of proof beyond reasonable doubt. It is not possible to determine whether the jurors returned a verdict of acquittal because they credited the testimony in support of appellant's alibi, or for the reason that they found the state's evidence insufficient as to one or more essential elements of the offense charged. They could have utterly disregarded all of the testimony adduced by the appellant in his defense and yet have returned a verdict of not guilty. The verdict and the judgment based thereon were not, therefore, *res judicata* as to appellant's alibi, nor as to any other particular fact. They were *res judicata* only as to the ultimate fact that appellant was not guilty of the crime of which he was accused."

Accordingly, we conclude that the State was not collaterally estopped by virtue of the first verdict from relitigating the defendant's guilt on the Yager indictment.

Finally, the claim is advanced that the re-indictment and retrial of the defendant following his acquittal upon the first three indictments constituted a denial of due process of law under the Fourteenth Amendment of the United States Constitution because it offends fundamental justice. It is contended that to permit piecemeal indictments would allow the State, even though it knows all of the victims, to indict a defendant *seriatim* for each victim, thereby dragging out the prosecution and denying the defendant his constitutionally protected right to a speedy trial. This type of deliberate harassment by an over-zealous prosecutor, it is said, should not be tolerated.

Counsel for the appellant in his plea exhibits the same philosophy expressed in an article he wrote (10 *Rutgers L. Rev.* 97 (1955)), urging that if there be any advantage to be derived from the use of such procedure, it should inure to the benefit of the prisoner, although it has always been otherwise in this jurisdiction.

If this procedure has proven a factor in the vigorous administration of the criminal law, it has been for good and not evil, which is apparent by its long continuance. No persuasive reason has been proffered why a change should be made and still another obstacle placed in the path of the prosecuting authorities to prevent the escape of the guilty. When and if the change is made, it should be the product of a legislative mandate and not by judicial overthrow of a long-continued practice. We perceive no constitutional prohibition against the procedure pursued here.

The judgment below is affirmed.

HEHER, J. (dissenting). The determinative question on the trial of the earlier indictments accusing the defendant Hoag of the armed robbery of Cascio, Capezzuto and Galiardo, as separate and distinct offenses, was the identity of the accused as one of the perpetrators of the robbery of the

named individuals and Yager, too, all as part of the same transaction; and it was resolved by the acquittal of the accused, a finding conclusive of the basic issue, on the plainest principles of justice precluding its relitigation on the trial of the fourth indictment, returned immediately after the acquittal, laying to Hoag the armed robbery of Yager at the same time and place.

My brethren say: "Nor was the defendant's plea of alibi necessarily established by the first jury's general verdict of not guilty. There is nothing to show that the jury did not acquit the defendant on some other ground or because of a general insufficiency in the State's proof." But there can be no doubt, I submit, of the issue submitted to the jury and the fact upon which the exculpatory verdict turned, *i. e.*, the accused's participation in a holdup that was a conceded fact.

The appendix submitted to the Appellate Division was found to be deficient; and the "factual structure upon which the defendant's points of appeal" were considered took the "form of a statement of facts" to which counsel for the State and the accused subscribed and the trial judge gave his approval. See *R. R.* 1:6–2; 2:6. *State v. Hoag,* 35 *N. J. Super.* 555 (*App. Div.* 1955). The certification thus made was the return of the three indictments severally charging the armed robbery of the named individuals, as distinct offenses, the consolidation of the indictments for trial, and the acquittal on all three indictments following a jury trial held May 26 and 27, 1952; also, that the judgment under review is founded on an indictment returned July 17, 1952, accusing Hoag of the armed robbery of Yager "on the same occasion, as set forth in the indictments of June 26, 1951"; that Yager "testified as to the details of the holdup at the trial" of the three earlier indictments; and that prior to and in the course of the trial of the later indictment now before us, the accused "invoked the defense of former or double jeopardy on the grounds that there was but one incident and one holdup," and "all of the victims were present at the same time and place," and "the

testimony of all of the victims, including" Yager, "was given at the first trial, when defendant was acquitted."

On our order a transcript of the evidence adduced at the first trial was provided; and this was followed by a stipulated addendum to the Statement in Lieu of Record, declaring that at the first trial "there was no dispute as to the fact of the robbery or that the said victims, Cascio, Capezzuto, and Galiardo, as named in the separate indictments, were robbed"; that "[d]efendant testified as to the alibi and the three victims named testified on behalf of the State as to the defendant's identity," and "[t]hese same victims testified on behalf of the defendant at the second trial."

It is said in the majority opinion that "[w]ithin a matter of weeks after the robbery, the victims were shown photographs of criminals known to have engaged in [similar] activities," and "Two of the victims identified the photograph of one man, the present defendant, as one who had engaged in the robbery." But this was not so as to either Cascio or Capezzuto. They each denied in clear and positive terms, at the first trial and the second, that the accused was one of the perpetrators of the holdup; and there was no plea of surprise at the earlier trial or an offer to neutralize their testimony by proof of such photographic identification, nor was this made the subject of interrogation on the second trial when they testified for the accused. The State made no such contention on either trial.

Galiardo, the operator of the tavern where the holdup occurred, had identified the accused by means of a photograph shown to him in New York. And he testified at the first trial, as the State's witness, that "This Mr. Hoag looks like the man that was in my place," "I'm not positive, but I think so"; that he viewed two police "lineups" in New York when Hoag was in custody there, "12 men in the lineup," and he had said, "I don't think the man is there," and this he reiterated on the witness stand. "Q. But if Hoag were in any of those lineups that you were at you did not identify him? A. That's right. Q. You say he wasn't there? A. I don't think he was there. Q. You

couldn't identify him at that time? A. Right." His testimony on the second trial was in substance the same; he said that, having seen the accused "in the flesh," he could not be positive that he was a participant in the holdup; he could not "swear that it was him"; and he could not "swear that it wasn't."

The State's witness, Dottino, who was in the tavern at the time, said of a picture shown to him "the next day": "It looks like the man but I'm not positive." "Q. Look at this picture. A. I will look at it sure. It looks like the man but it isn't him. Q. Did you identify this picture as being one of those involved in the stickup? A. I'm not positive, I'm not sure." He was called to a police "lineup" in New York, but "the man wasn't there that stuck us up"; the "fellow that held us up was darker, thin, weighed about 160 or 165 pounds, thin, come in with a brown jacket he had on"; the "fellow that stuck us up was dark, very dark." The witness said he also had been robbed, but there was no indictment charging a taking from his person. His testimony on the later trial was the same.

The jury in the present case apparently found the issue factually troublesome. It returned a verdict of guilty after having reported a disagreement four hours earlier, which the court refused to accept.

The county prosecutor was at a loss on the oral argument to explain the omission at the outset to return an indictment for the robbery of Yager, who was a witness before the grand jury on the first presentation and identified the accused on the trial of the three indictments later returned. The prosecutor was not then in office. And he was unable to offer an alternative hypothesis for the verdict excluding the accused's nonparticipation in the holdup, an understandable difficulty.

Here, the act-offense dichotomy threatens consequences far more serious than the possible cumulation of consecutive terms of imprisonment where, it has been suggested, injustice from the "manipulation of a single fact situation" is remediable either by the sentencing judge or the pardoning

power. See Mr. *Kirchheimer's, "The Act, the Offense and Double Jeopardy,"* 58 *Yale Law Journal* 513 (1949). By the fourth indictment, the accused was placed on trial and convicted for the same act or transaction of which, as a necessary consequence, he had been exonerated by the verdict and judgment of acquittal on the earlier indictments.

As contended by Professor Knowlton and his associate, Mr. Warren, who accepted the invitation of this court to prosecute the appeal, robbery consists of an assault and a taking; and here the assaults were simultaneous, the putting in fear was but a single act or offense operating alike upon all the victims of the felonious endeavor at the same time, and a second prosecution would contravene the double jeopardy clause of the *State Constitution, Article* I, *paragraph* 11, and the ancient principle of the common law that one may not be twice put in jeopardy for the same offense. The accused had been acquitted of the basic act of the robbery, the act without which the indictment for armed robbery is not maintainable.

Chitty affirmed that the pleas of *autrefois acquit* and *autrefois convict* depend on the principle that "no man shall be placed in peril of legal penalties more than once upon the same accusation. * * * It is not, in all cases, necessary that the two charges should be precisely the same in point of degree, for it is sufficient if an acquittal of the one will show that the defendant could not have been guilty of the other." 1 *Chitty Cr. L.* 452, 462. And Cockburn, C. J., said in *R. v. Elrington,* 31 *L. J.* 14 *M. C.*: "It is a fundamental principle that out of the same state of facts a series of prosecutions is not to be allowed."

Such is the rationale of our own cases. Where the "fact prosecuted" is the same in both prosecutions, though the offenses differ "in coloring and degree," there is prior jeopardy. *State v. Cooper,* 13 *N. J. L.* 361 (*Sup. Ct.* 1833). Justice Drake there referred to the protection against multiple prosecutions for crime as a "great principle" of the common law forming "one of the strong bulwarks of liberty," whose prostration would subject the citizen, "if guilty of an

offense, to the unnecessary costs and vexations of repeated prosecutions, and if innocent, not only to those, but to the danger of an erroneous conviction from repeated trials." He continued: "If in civil cases, the law abhors a multiplicity of suits, it is yet more watchful in criminal cases, that the crown shall not oppress the subject, or the government the citizen, by unnecessary prosecutions." The doctrine has its roots in natural justice, to shield the freeman from the oppression and persecutions of arbitrary government, a limitation upon absolute power confirmed by King John's Magna Charta of 1215, in the provision (*c.* 29) securing the essentials of individual right and justice and the ancient liberties of the freeman against interference "but by lawful judgment of his peers, or by the law of the land." *State v. Labato,* 7 *N. J.* 137 (1951). The inquiry is "whether or not the offenses grew out of the same transaction or were the product of a single act." *State v. Mowser,* 92 *N. J. L.* 474 (*E. & A.* 1919), Kalisch, J. See *State v. Cosgrove,* 103 *N. J. L.* 412 (*E. & A.* 1927); *State v. Pennsylvania Railroad Co.,* 9 *N. J.* 194 (1952). I perceive no distinction in principle between these cases and the case at bar. A prosecution "for any part of a single crime bars any further prosecution based on the whole or part of that crime." *State v. Shannon,* 136 *Me.* 127, 3 *A. 2d* 899, 120 *A. L. R.* 1116 (*Sup. Jud. Ct.* 1939). There is in such circumstances the identity of offenses which brings the principle into operation. If not guilty of the felonious act laid to the accused in the earlier indictments, he could not be guilty of the offense charged in the later indictment.

In mitigation of the rigor of the "same evidence" rule denying double jeopardy where the second charge is so formulated as to be susceptible of proof by different evidentiary facts, the "same transaction" test has been given recognition in the English cases. See, *e. g., Wemyss v. Hopkins,* 10 *Q. B.* 378, 381 (1875), where a conviction on a complaint alleging damage to a person by "negligence or willful misbehaviour," *i. e.,* by "striking a certain horse

ridden" by the complainant, was held to bar a second complaint for assault under another statute as a proceeding involving the "same identical matter." Blackburn, J., said:

> "The defence does not arise on a plea of *autrefois convict*, but on the well-established rule at common law, that where a person has been convicted and punished for an offence by a Court of competent jurisdiction, *transit in rem judicatum*, that is, the conviction shall be a bar to all further proceedings for the same offence, and he shall not be punished again for the same matter; otherwise there might be two different punishments for the same offence."

Whether there be a conviction or an acquittal, the accused cannot be twice vexed for the same cause.

In *People v. Israel,* 269 *Ill.* 284, 109 *N. E.* 969 (*Sup. Ct.* 1915), where goods belonging to different owners were stolen from the same building at the same time, it was held, on a question of duplicity in criminal pleading, that there was but "a single offense against the public. * * * Where the offense is one act, fully completed at the same time and place, it is but one crime, however many different kinds of property may be stolen." A distinction was made between an offense committed against the public and wrongs against private citizens as the separate owners of the stolen property. "As against the public," it was affirmed, "such an act is but one offense or crime," although "there are as many wrongs committed against private citizens as there are separate owners."

And in *People v. Perrello,* 350 *Ill.* 231, 182 *N. E.* 748 (*Sup. Ct.* 1932), where several individuals were robbed at the same time in a holdup of a social gathering, the conclusion was that the whole transaction constituted but one offense and could be prosecuted as such. The propriety of joinder was the issue raised there; and the court distinguished such criminal conduct from separate offenses "not parts of one and the same transaction," but "separate and distinct in law and in fact," a differentiation that on principle would seem to hold good where *res judicata* is concerned. See *People v. Brooklyn & Queens Transit Corporation,* 283 *N. Y.* 484, 28 *N. E. 2d* 925 (*Ct. App.* 1940),

holding that an acquittal on a charge of maintaining a public nuisance prior to a given day is not a bar to the prosecution of a charge of maintaining a nuisance thereafter, "yet it may in proper case constitute an adjudication of an issue of fact or of law necessarily determined by the earlier judgment * * *."

The "same evidence" test derived from *Rex v. Vandercomb*, 2 *Leach* 708, 168 *Eng. Rep.* 455 (1796), Buller, J., designed to allow a new proceeding against one acquitted because of variance between allegation and proof, does not serve the basic principle of protection against arbitrary action in the field of multiple prosecutions for the one act or offense. See *Kirchheimer's "The Act, the Offense, and Double Jeopardy," supra; Note*, 24 *Minn. L. Rev.* 522, 550–558 (1940). Apropos of this, Professor Lugar has said in a recent article, *"Criminal Law, Double Jeopardy and Res Judicata,"* 39 *Iowa L. Rev.* 317 (1954), at *p.* 347:

> "Not until the prosecutor is required to use in one case all of the operative facts, known or discoverable by him, arising from essentially one criminal act of the accused, or be forever barred from using any of them in future prosecutions will the accused be protected from undue harassment."

And while the rule of former jeopardy has reference to criminal prosecutions only, the pleas of former conviction and acquittal involve also the principle of *res judicata* or, as it is sometimes termed, "estoppel by judgment," "estoppel by verdict," or "collateral estoppel." *Res judicata* is a species of estoppel. Where the second action between the same parties is upon a different cause or demand, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but "only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." *Commissioner of Internal Revenue v. Sunnen*, 333 *U. S.* 591, 68 *S. Ct.* 715, 92 *L. Ed.* 898 (1948); *Partmar Corporation v. Paramount Theatres Corporation*, 349 *U. S.* 89, 74 *S. Ct.* 414, 98 *L. Ed.* 532 (1954). The one precludes the reliti-

gation of particular causes of action; the other precludes the relitigation of particular facts and issues. See *United States v. International Building Co.*, 345 *U. S.* 502, 73 *S. Ct.* 807, 97 *L. Ed.* 1182 (1953). The successful maintenance of a second action on a different cause of action may be precluded by a prior conclusive adjudication of a particular issue involved in both actions. *United Shoe Machinery Corporation v. United States*, 258 *U. S.* 451, 42 *S. Ct.* 363, 66 *L. Ed.* 708 (1922). In determining whether the second action is for the same cause of action, the inquiry is whether there is the identity of facts essential to their maintenance, or whether the same evidence would sustain both, *i. e.*, the "same evidence" rule. *Meirick v. Wittemann Lewis Aircraft Co.*, 98 *N. J. L.* 531 (*E. & A.* 1923). See *United States v. The Haytian Republic*, 154 *U. S.* 118, 14 *S. Ct.* 992, 38 *L. Ed.* 930 (1894). But such is not the test of collateral estoppel, although the basic principle is the same. *Hancock, Comptroller, v. Singer Mfg. Co.*, 62 *N. J. L.* 289 (*E. & A.* 1898); *Tait v. Western Maryland R. Co.*, 289 *U. S.* 620, 53 *S. Ct.* 706, 77 *L. Ed.* 1405 (1933).

We are dealing with a principle of universal jurisprudence, grounded as it is in the essential justice of putting an end to litigation in the interest of the individual litigants and the public as well. In civil cases at common law the doctrine is expressed by the maxim that no man shall be twice vexed for one and the same cause. *Nemo debet bis vexari pro (una et) eadem causa.* In this class of case the plea of a former judgment for the same matter, whether it be in favor of the defendant or against him, is a good bar to an action; and the rule is the same where the ultimate issuable fact has been determined by judgment in a proceeding between the parties. *Ex parte Lange,* 18 *Wall.* 163, 21 *L. Ed.* 872 (1874). As Justice Drake said in *State v. Cooper, supra,* this is *a fortiori* the rule in criminal cases also, to secure the subject and the citizen from the oppression of unnecessary prosecutions.

The principle qualifies the "same evidence" test in double jeopardy cases, just as the "necessarily included offense" con-

cept modifies the same evidence formula to secure the cherished basic liberty of immunity from repeated jeopardy. See *State v. Cosgrove, supra.* We are concerned here with the quality of finality inherent in criminal judgments.

In *United States v. Oppenheimer,* 242 *U. S.* 85, 37 *S. Ct.* 68, 61 *L. Ed.* 161 (1916), Justice Holmes adopted this declaration of Hawkins, J., in *Reg. v. Miles, L. R.* 24 *Q. B. Div.* 423, 431:

> "Where a criminal charge has been adjudicated upon by a court having jurisdiction to hear and determine it, the adjudication, whether it takes the form of an acquittal or conviction, is final as to the matter so adjudicated upon, and may be pleaded in bar to any subsequent prosecution for the same offense. * * *. In this respect the criminal law is in unison with that which prevails in civil proceedings."

He continued:

> "It cannot be that the safeguards of the person, so often and so rightfully mentioned with solemn reverence, are less than those that protect from a liability in debt. * * *. The finality of a previous adjudication as to the matters determined by it, is the ground of decision in *Com. v. Evans,* 101 *Mass.* 25, the criminal and civil law agreeing, as Mr. Justice Hawkins says."

And though, with some exceptions, one may be prosecuted in the federal jurisdiction for the commission of a substantive offense and a conspiracy to commit it, "*res judicata* may be a defense in a second prosecution. That doctrine applies to criminal as well as civil proceedings, * * * and operates to conclude those matters in issue which the verdict determined though the offenses be different." *Sealfon v. United States,* 332 *U. S.* 575, 68 *S. Ct.* 237, 92 *L. Ed.* 180 (1948). There, the court considered the facts adduced at each trial, and the instructions given the jury on the first trial, in determining whether the jury's verdict in the conspiracy trial resolved in favor of the petitioner the facts essential to conviction of the substantive offense; and the conclusion was that the earlier verdict precluded a later conviction of the substantive offense. Said Justice Douglas:

"It was a second attempt to prove the agreement which at each trial was crucial to the prosecution's case and which was necessarily adjudicated in the former trial. That the prosecution may not do."

In a later case it was said that the general doctrine of estoppel "is as applicable to the decisions of criminal courts as to those of civil jurisdiction. * * * In the case of a criminal conviction based on a jury verdict of guilty, issues which were essential to the verdict must be regarded as having been determined by the judgment"; what was decided by the criminal judgment is to be had by an "examination of the record, including the pleadings, the evidence submitted, the instructions under which the jury arrived at its verdict, and any opinions of the courts"; and the holding was that a prior criminal conviction may work an estoppel in favor of the government in a subsequent civil proceeding. *Emich Motors Corp. v. General Motors Corp.*, 340 *U. S.* 558, 71 *S. Ct.* 408, 95 *L. Ed.* 534 (1951). See *Note*, 24 *Minn. L. Rev.* 522, 558.

See also *United States v. De Angelo,* 138 *F. 2d* 466 (3 *Cir.* 1943); *Adkins v. Commonwealth of Virginia,* 175 *Va.* 590, 9 *N. E. 2d* 349, 131 *A. L. R.* 1312 (*Sup. Ct.* 1940).

*Harris v. State,* 193 *Ga.* 109, 17 *S. E. 2d* 573, 147 *A. L. R.* 980 (*Sup. Ct.* 1941), is directly in point. There, the defendant, acquitted of murder, was later convicted of the robbery out of which the killing arose. Holding that the two crimes were not the same offense under Georgia law, the Georgia Supreme Court reversed the conviction as ill-founded since the sole issue at the earlier trial was the identity of the defendant. This court reasoned thus:

"In the former trial for murder there was not the slightest pretense of justification on the part of the defendant. The whole contention in that case centered upon the single question whether the defendant participated with another in the murder and robbery of the deceased. If he did, he was necessarily guilty of murder. By acquitting him, the jury necessarily found that he did not participate in the transaction. This was the sole issue that was tried and determined. It is now sought, after such a solemn determination, to test again the same issue, and to undo the necessary effect of the former judgment by adjudicating that the defendant did in fact participate in the robbery and murder, from which the jury has

already absolved him. Since it undisputably appears that the defendant could not be guilty of the present charge without also being guilty of the crime of which he has been tried and acquitted, he cannot now be put in jeopardy for the purpose of again adjudicating the issue which has already been determined in his favor."

The verdict and judgment of acquittal on the earlier indictments of necessity presupposes the nonparticipation of the accused in the armed robbery of Yager. The verdict of acquittal could not have been reached otherwise; the accused's exculpation of all complicity in the holdup is indubitably a part of the thing adjudged, and so it is conclusive of the ultimate issuable fact of guilt. Unless this be so, then the citizen in such circumstance is subject to successive prosecutions until a convicting jury is found.

I would reverse the judgment and direct a dismissal of the indictment.

Mr. Justice JACOBS and Mr. Justice BRENNAN join in this opinion.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD and BURLING—4.

*For reversal*—Justices HEHER, JACOBS and BRENNAN—3.