## THE HAYTIAN REPUBLIC.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 1136.   Argued April 27, 1894. — Decided May 26, 1894.

When a vessel, libelled for smuggling and for violations of the Chinese Exclusion Act, is discharged on giving the bond required by law, it may be again libelled in another district for similar offences, alleged to have been committed prior to the offences charged in the first libel; but, if both suits proceed to judgment, there can be but one forfeiture of the vessel.

ON June 7, 1893, in the District Court of the United States for the District of Washington, the United States libelled the steamship Haytian Republic for violations of the " Chinese Exclusion Act," and for smuggling opium.  It was averred that the violations of the Exclusion Act occurred at the following dates: 1st, September 20, 1892; 2d, October 8, 1892; 3d, October 12, 1892; 4th, October 15 and 16, 1892; 5th, November 1, 1892; 6th, November 26, 1892 ; 7th, December 12, 1892; 8th, December 13, 1892; 9th, January 2, 1893 ; 10th, January 26, 1893 ; 11th, February 2, 1893 ; 12th, March 28, 1893 ; 13th, May 11, 1893.

The offences of opium smuggling, according to the libel, were committed as follows :

November 21, 1892, at Portland, Oregon, 2000 pounds, of the value of $22,000; December 7, 1892, at St. Johns, on the Columbia River, 1000 pounds, of the value of $11,000.

The prayer was for the forfeiture of the vessel on account of the violations of the Exclusion Act, and for judgment for $32,000, the value of the opium, with recognition of a lien on the ship for that amount.

The Northwest Loan and Trust Company claimed the vessel, and, after due appraisement, she was bonded.

On the 6th day of July, 1893, in the District Court of the United States for the District of Oregon, the United States again libelled the same steamship for violations of the Chinese Exclusion Act and for smuggling opium. In this libel it was alleged that the violations of the act were committed at the following dates: 1st, October 29, 1892; 2d, June 14, 1893; and 3d, June 28, 1893, all at the port of Portland, Oregon. And the opium smuggling was charged as follows:

1st, October 29, 1892, at Portland, Oregon, 1640 cans, containing 820 pounds, of the value of $9840; 2d, December 27, 1892, at St. Johns, Oregon, 1000 pounds, valued at $12,000.

The prayer of this second libel was for forfeiture of the vessel for the violations of the Exclusion Act and for judgment for $28,840, the value of the opium, with recognition of a lien on the vessel for that amount.

On the 14th of July, 1893, an amended libel was filed, charging the smuggling of opium, 1st, on July 28, 1892, Willamette River, 300 pounds of opium, of the value of $3300; 2d, on August 30, 1892, on the Columbia River, near the mouth of the Willamette River, of 800 pounds, of the value of $8800; 3d, on the 2d of September, 1892, near Swan Island, 1400 pounds, worth $15,400; 4th, on the 27th of January, 1893, at Portland, Oregon, 1200 pounds, worth $11,220; and 5th, on the 22d of February, 1893, at Portland, Oregon, 900 pounds, value $9900.

The prayer of the amended libel was also for the forfeiture of the vessel, and for a decree for the penalty to the value of the opium, which was $48,620, with lien upon the vessel.

The original and amended libel claimed, therefore, the for-

feiture of the vessel for three violations of the Chinese Exclusion Act, the first occurring in October, 1892, and the two last after June 7, 1893; and also sought to enforce against the vessel an aggregate penalty of $77,460 for seven acts of opium smuggling, which, they charged, had taken place at various dates between the 28th of July, 1892, and the 22d of February, 1893.

Thus, all the offences against the Chinese Exclusion Act, charged by these libels, except the two last, occurred prior to June 7, 1893, the date of the filing of the libel in the District Court of Washington, and all the offences of opium smuggling therein charged occurred prior to the filing of the suit in Washington.

The Northwest Loan and Trust Company appeared as claimant in the new suit. It excepted to all the averments as to violations of the Exclusion Act and smuggling which, according to the allegations, were committed before the filing of the suit in the District of Washington. Its exception, therefore, covered all the charges of smuggling opium and one of the charges of violation of the Chinese Exclusion Act. To the two averments of violation of the act, which were not excepted to, an answer was filed.

The court sustained the exception and dismissed the libels, except as to the two charges of violation of the Exclusion Act subsequent to the filing of the suit in the Washington District. As to these, it held that the averments of the libel stated no violation of the laws of the United States.

The case was taken by appeal to the Circuit Court of Appeals for the Ninth Circuit, where the judgment of the District Court was affirmed. This action of the Circuit Court of Appeals was brought up for review under a writ of certiorari.

*Mr. Solicitor General* for the United States.

*Mr. John H. Mitchell* for the steamship Haytian Republic and for The Northwest Loan and Trust Company.

The well-settled rule, which requires the boundaries of the jurisdictions of courts of equal jurisdiction in different States or

districts, both as to persons and subject-matter, to be clearly defined and recognized, to the end that proceedings in one shall not in any respect, or in the slightest degree, be obstructed or delayed by proceedings in the other, will not permit a second seizure and libel *in rem* against a vessel, pending seizure and proceedings thereunder in another jurisdiction, or even in the same jurisdiction, and for alleged cause or causes of forfeiture existing at the date of the first seizure. If there can, under such circumstances, be a second seizure, then there may be a third, and a fourth, or even more, in as many other districts, or even in the same district.

The right of the claimant to give bond and have the vessel released is a statutory right, — one which attaches as often as a seizure occurs, but he must give bond conditioned for the payment of the full appraised value of the vessel in the event of condemnation. If there can be two or more seizures of the same vessel in as many different districts and as many different bonds given for the value of the vessel, and a decision in each case be entered in favor of the government, may not the claimant, nay, will he not, be compelled to respond on these several bonds to an amount double or treble, as the case may be, of the value of the vessel?

The Solicitor General suggests in his brief that "If various libels filed by the government be pending in different jurisdictions, each involving a forfeiture, and a bond has been given, in a proper case a stay may be obtained, pending a speedy determination in one suit, and if a judgment of forfeiture is rendered in that suit, it would seem proper to allow it to be pleaded in bar of the other suits."

It is respectfully submitted that any rule which makes the progress of the proceedings in one district court depend on the progress or delay of similar proceedings in another district court, ought not to be regarded with favor by this court.

This being a proceeding *in rem* not *in personam*, it is clear the case does not come within the category of cases permitting separate suits as upon separate and distinct demands; on the contrary, this proceeding *in rem* comes clearly within the doctrine laid down by this court, speaking through

Mr. Justice Field, in *Stark* v. *Starr*, 94 U. S. 477, 485, where it is said : " It is undoubtedly a settled principle that a party seeking to enforce a claim legal or equitable must present to the court, either by the pleadings or proofs, all the grounds upon which he expects a judgment in his favor.  He is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail.  There would be no end to litigation if such a practice were permissible."

What was the special relief sought by the government in the proceeding in the Washington court ?  Simply the confiscation of the vessel.  This being so, the government was " not at liberty to split up its demand and prosecute it by piecemeal."

What would be the result of a final decision either way by the Washington court as a bar to future seizures and suits for antecedent causes of forfeiture, whether such causes were or were not included in the libel in that case ?  The answer to this query is a proper test as to whether the Oregon court could acquire jurisdiction pending the suit in the Washington court, or if jurisdiction could attach, whether it could stand against a plea of *lis pendens* in the Washington court.

It is respectfully insisted such final decree in the Washington court, either condemning the vessel on the one hand, or exonerating the owner against all charges preferred on the other, would be an absolute bar to any future suit against the same vessel, either on account of the causes of forfeiture alleged in the bill or any similar antecedent causes, not included in the bill.  If this be true, then a plea in abatement or bar, or exceptions filed, which amount to the same thing in effect, to the bill in the Oregon court, must abate the proceedings in that suit.

Chief Justice Marshall, in *Osborn* v. *Bank of the United States*, 9 Wheat. 738, held that, to ascertain what is embraced in a cause it is necessary to consider what will be concluded by the judgment, and a judgment is confessedly conclusive of every point which might have been raised in pleading, whether

Opinion of the Court.

it is or is not actually put at issue and determined. See also *Beloit* v. *Morgan*, 7 Wall. 619.

A former judgment between the same parties in which a claim was decided or was properly involved and might have been decided is a bar to another action or suit as to such claim. *Stockton* v. *Ford*, 18 How. 418.

"The discovery of new evidence, not in the power of the party at the former trial, forms no exception to the rule in relation to estoppel, whether the second action is at law or in equity."

"An adjudication is final and conclusive not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have decided as incident to or essentially connected with the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to matters of claim and of defence."

"If either party omits to set forth and prove all the grounds of his right or his adversary's want of it, he cannot correct his error by bringing another suit upon the portion or fragment of the case omitted." Freeman on Judgments.

MR. JUSTICE WHITE, after stating the case, delivered the opinion of the court.

All question as to the correctness of the rulings below, that the two alleged violations of the Exclusion Act after June, 1893, constituted no offence against the laws of the United States, was waived in the discussion at bar.

The first question, then, for consideration is, was the action of the court correct in dismissing all the charges, both as to the introduction of Chinese and as to the importation of opium prior to June 7, 1893, because of the pendency of the suit in the District of Washington?

Pretermitting all question as to whether the pendency of suits in District Courts of the United States sitting in different States, is a subject-matter of the defence "other suit pending" — the issue is, "Did the suit in Washington prevent the

bringing of suit in Oregon?" Both the introductions of Chinese and the importations of opium which were averred in the suit in Oregon were distinct and different acts from those charged in the libel filed in the District Court of Washington. The elementary principle which governs the availability of the plea of "other suit pending" was thus stated in *Watson* v. *Jones*, 13 Wall. 679, 715:

"When the pendency of such a suit is set up to defeat another, the case must be the same. There must be the same parties, or, at least, such as represent the same interest, there must be the same rights asserted and the same relief prayed for. This relief must be founded on the same facts, and the title, or essential basis of the relief sought, must be the same."

Tested by these principles, it is obvious that the plea of pendency of the suit in Washington was not available here. There were the same parties, but not the same rights asserted; and the claim of relief was not founded upon the same facts. In the case just cited it was said that the true test of the sufficiency of a plea of "other suit pending" in another forum was the legal efficacy of the first suit, when finally disposed of, as "the thing adjudged," regarding the matters at issue in the second suit. *Dick* v. *Gilmer*, 4 La. Ann. 520; *Bischoff* v. *Theurer*, 8 La. Ann. 15.

The efficiency of the test, thus applied, results from the fact that the elements constituting the thing adjudged, and those necessary for the plea of "other suit pending," are identical.

It is obvious that the decision of the suit in Washington would not have constituted the thing adjudged as to the matters averred in the suit in the District of Oregon. The charges were different. If the court in Washington had found that, at the times and places named, the vessel had not smuggled opium and had not illegally imported Chinese, and adjudged accordingly, such judgment would not have affected the question of whether or not similar offences had been committed at other times and places.

It is contended, however, that, although the two suits involved the assertion of different rights, as the rights asserted

in the last suit were in existence at the time the first suit was brought, therefore they should have been asserted in that suit, and could not be afterwards relied upon in a separate suit, in a different forum. In support of this proposition we are referred to the case of *Stark* v. *Starr*, 94 U. S. 477, 485, and this language is quoted from the opinion in that case:

"It is undoubtedly a settled question that a party seeking to enforce a claim legal or equitable must present to the court, either by the pleadings or proofs, all the grounds upon which he expects a judgment in his favor. He is not at liberty to split up his demand and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There would be no end to litigation if such a practice were permissible."

This statement, however, is qualified by the following, which is not included in the citation: "But this principle does not require distinct causes of action — that is to say, distinct matters — each of which would authorize by itself independent relief, to be presented in a single suit, though they existed at the same time and might be considered together." p. 485.

The qualification states the elementary rule. One of the tests laid down for the purpose of determining whether or not the causes of action should have been joined in one suit is whether the evidence necessary to prove one cause of action would establish the other. *Cripps* v. *Talvande*, 4 McCord, 20.

It is evident that proof showing that a particular lot of opium had been smuggled on a particular day, or a particular number of Chinese had been imported at a particular time, would have no relevancy or tendency to prove the smuggling of a different lot of opium at a different time, or the importation of a different number of Chinese at a different date.

It was conceded, in argument, that where a vessel had been bonded and then committed an offence — which made her liable to forfeiture — she could be proceeded against in a court other than where the bond was given. This admission practically involves the whole point at issue here. If the

vessel, after the bond had been given, was not in the custody of the court of first resort to the extent of preventing a second libel from being filed against her in another court for a subsequently arising offence, she was not in the custody of the court so as to prevent a seizure for an offence which existed at the time of the first libel, and which the libellants were under no legal necessity to join therein. The attempted distinction rests upon the theory that, after bonding, the vessel was in the custody of the court for the purposes of all claims existing at the time of the bonding, and out of the custody of the court as to all claims arising subsequent thereto. But if the vessel was in the custody of the court at all, it was there for all purposes, and the admission that it was not so in the custody of the first court as to preclude proceedings against it in another forum under certain circumstances carries with it the concession that it was not in that custody to such an extent as to affect the question of proceedings elsewhere under any circumstances whatever.

It is true that, where a fraudulent appraisement has been had, or a fraudulent or illegal bond has been given, in an Admiralty proceeding, the court has the power to recall the vessel for the purpose of requiring an honest appraisement and of exacting a legal bond. *United States* v. *Ames*, 99 U. S. 35; *The Union*, 4 Blatchford, 90; *The Favorite*, 2 Flippin, 86; *The Thales*, 3 Ben. 327; 2 Parsons on Shipping, 411. This special power, however, to meet a particular contingency does not affect the general rule, or imply that the vessel, after a legal bond has been given, remains in the exclusive custody and jurisdiction of the court. *The Union, supra.*

It is urged that, as in the first case the issue was the forfeiture of the vessel, and this involved her entire value, and as the bond given represented that entirety, the existence of the bond in the Washington court precluded the raising of any question concerning the liability of the vessel to forfeiture elsewhere. The fallacy here lies in supposing that the bond took the place of the entire value of the vessel for any other purpose than the subject-matter of the suit in which the bond

was given. The claim for forfeiture alleged in the cause wherein the bond was given was alone covered by the bond, and therefore, the assertion of a right to forfeiture for another and distinct cause was not embraced in its condition, although its penalty was the full value of the vessel. The authorities are clear upon this point. In *The Wild Ranger*, decided by Dr. Lushington, the facts were these: A collision occurred between the Wild Ranger and the Coleroon. The Wild Ranger was libelled by the owners of the other vessel, who claimed £3500, and was released under bond. Subsequently she was libelled by the owners of the cargo of the Coleroon. In this last proceeding a decree of condemnation was rendered, the vessel was sold, and the proceeds of sale were paid into court. The price of the sale exceeded the sum of the damages awarded to the owners of the cargo. Pending these proceedings under the second libel, the damages due to the owners of the Coleroon were ascertained to be greater than the sum of the bond given in their case. The owners of the Coleroon thereupon claimed the balance realized by the sale of the Wild Ranger, over and above the amount which had been decreed to the owners of the cargo. Upon this state of facts Dr. Lushington thus ruled:

"In order to justify me in directing these proceeds to be paid to the owners of the 'Coleroon' it is not sufficient that they should show that a debt is due them from the owners of the 'Wild Ranger'; they must either prove that they have a lien upon the proceeds or produce a statute authorizing me to apply these proceeds in satisfaction of the judgment they have obtained. Now, there is no lien on these proceeds, by reason of the action being in the nature of an action *in rem.* The proceeds of the ship sold are, in legal consideration, the same as the ship itself; and the ship was wholly released from all claim by the owners of the 'Coleroon' from the moment that they took bail." *The Wild Ranger*, 2 New Rep. 402, 403.

In the *T. W. Snook*, 51 Fed. Rep. 244, 245, the Snook had been libelled by the Georgia and released under bond for $4000, double the amount of the Georgia's claim. After the

release of the Snook the Continental Insurance Company, which had paid for a loss on the cargo of the Georgia, intervened and asserted its right to be reimbursed for its expenditure out of the balance of the bond over and above the claim of the Georgia. The court (Blodgett, J.), said: "I do not think this application on the part of the insurance company should prevail, my reasons being briefly that at the time the bond was given on which the Snook was released no claim was made in the proceedings except for damage to the hull of the Georgia, and, in fact, it was not until about two months after this bond had been given that the insurance company paid the loss on the cargo, and thereby acquired any right of intervention or subrogation. The sureties on the bond must be presumed to have signed it on the understanding that their liability was only to satisfy the cause of action set out in the libel, which was for the damages to the hull of the Georgia." (See also *The Union*, 4 Blatchford, 90.)

There is no force in the argument that, as the suit in Washington claimed the forfeiture of the vessel and the suit in Oregon claimed the same thing, there was a practical identity between them. The fallacy results from a failure to distinguish between the right and the remedy. True, the remedy sought in Washington was the forfeiture of the vessel, and the same remedy was invoked in Oregon, but the causes of action upon which the remedy was prayed in the two cases were entirely different. As we have seen, not only identity of relief, but identity of cause of action, is essential to the plea of pending suit, and both are also necessary to the efficacy of the plea of the thing adjudged.

It is urged that, as the matters could have been joined in the Washington suit, therefore they would have been concluded by a decree rendered therein, the argument being that a judgment concludes not only the matters actually in controversy, but all those which might have been adjudged.

In support of this contention we are referred to *Osborn* v. *Bank of the United States*, 9 Wheat. 738; to *Beloit* v. *Morgan*, 7 Wall. 619, and other authorities. It is unnecessary to examine these in detail. The proposition which they support

is well stated in an excerpt from Freeman on Judgments, quoted in the brief of counsel: "An adjudication is final and conclusive, not only as to the matter actually determined, but as to every other matter which the parties might have litigated and have decided as incident to or essentially connected with the subject-matter of the litigation, and every matter coming within the legitimate purview of the original action, both in respect to matters of claim and of defence."

If the deduction drawn by counsel from this and similar language were true, then a judgment upon one cause of action would be conclusive as to every other existing at the time, although not embraced in the suit, and although the parties were not obliged to join it therein. This would destroy the right of parties to sue separately upon distinct causes of action, and would be subversive of the entire theory of the thing adjudged. The mistake lies in construing the words "which might have been raised," as applying to a cause of action other than the cause of action embraced in the suit. In other words, the doctrine is that the thing adjudged includes not only the direct results of the cause of action which the judgment concludes, but also all things necessarily incident to and growing out of that cause which the parties might have joined in the suit. *Dowell* v. *Applegate*, 152 U. S. 327, 343. Of course, whilst concluding that the separate causes of the action here under consideration need not have been joined in one suit, and that the suit in Washington was no bar to the suit in Oregon, we must not be considered as intimating that there could be more than one forfeiture of the vessel. The distinct charges give rise to distinct causes of action, but the forfeiture for either would have consummated the proceedings.

*Judgment reversed and case remanded for further proceedings in accordance with this opinion.*