**Alma BOJORQUEZ et al.**

v.

**ABERCROMBIE & FITCH, CO. et al.**

**Case No. CV 15-9651 JGB (AGRx)**

United States District Court,
C.D. California.

Filed June 16, 2016

Hallie Von Rock, Carey A. James, Randall B. Aiman-Smith, Reed W. L. Marcy, Aiman-Smith and Marcy, Oakland, CA, for Alma Bojorquez et al.

Daren S. Garcia, Mark A. Knueve, Tyler B. Pensyl, Vorys Sater Seymour and Pease LLP, Columbus, OH, Kathy H. Gao, Morgan Lewis and Bockius LLP, Los Angeles, CA, for Abercrombie & Fitch, Co. et al.

**Proceedings: Order: (1) GRANTING Defendants' Motion to Sever and Dismiss, Motion for Judgment on the Pleadings, and Motion to Dismiss for Improper Venue (Dkt. No. 31); and (2) VACATING the June 20, 2016 Hearing (IN CHAMBERS)**

The Honorable JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

Before the Court is Defendants' Motion to Sever and Dismiss, Motion for Judg-

ment on the Pleadings, and Motion to Dismiss for Improper Venue. (Dkt. No. 31.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After consideration of the papers filed in support of and in opposition to the motion, the Court GRANTS the motion. The June 20, 2016 hearing is VACATED.

## I. BACKGROUND

Plaintiffs Alma Bojorquez, Jake Vallante, and Matthew Allan, (collectively, "Plaintiffs"), are current and former employees of Defendants Abercrombie & Fitch Co. and Abercrombie & Fitch Stores, Inc., (collectively, "Defendants" or "Abercrombie"). (See First Amended Complaint ("FAC") ¶¶ 18-22, Dkt. No. 29.) Abercrombie owns and operates retail stores throughout the United States which sell clothing and accessories primarily to children, teenagers, and young adults. (Id. ¶ 1.) Plaintiffs allege that Abercrombie committed and continues to commit various federal and state wage-and-hour violations because it requires its employees to purchase and wear Abercrombie clothing and footwear with their own funds without reimbursement and because it requires employees to call in before their shifts to find out if they have to go into work without paying employees for this reporting time. (Id. ¶¶ 5, 9, 10.)

The FAC alleges twelve causes of action, which are organized into two categories: Clothing and Footwear claims and Reporting Time claims. The first six causes of action are Clothing and Footwear claims. (Id. ¶¶ 79-116.) These claims allege that Abercrombie's policy of requiring its employees to purchase and wear Abercrombie-brand clothing and footwear without reimbursement pushes employee wages below the legal minimum, recaptures paid wages, takes unlawful deductions from wages, and requires the unreimbursed purchase of uniforms. (Id. ¶ 5.) Plaintiff

Alma Bojorquez ("Bojorquez"), a resident of California, brings a collective action claim pursuant to the federal Fair Labor Standards Act ("FLSA") for unpaid minimum wage compensation as a result of Abercrombie's clothing and footwear policy. (Id. ¶ 11.) Plaintiff Jake Vallante ("Vallante"), a Massachusetts resident, and Plaintiff Matthew Allan ("Allan"), a Florida resident, bring separate putative class action claims pursuant to Massachusetts and Florida law, respectively, for Abercrombie's clothing and footwear policy. (Id. ¶¶ 89-116.)

Causes of action 7 through 12 are Reporting Time claims, which allege that Abercrombie's policy of failing to pay its employees for time spent calling in to their stores before their scheduled start time to receive instruction on whether they are required to work that day violates various provisions of the California Labor Code. (Id. ¶ 10.) All of the Reporting Time claims are putative class action claims brought only by Bojorquez. (Id. ¶ 117-156.)

On March 14, 2016, Abercrombie moved to sever and dismiss Bojorquez's Reporting Time claims, moved for judgment on the pleadings as to Bojorquez's Clothing and Footwear FLSA claim on the grounds of improper claim splitting, and moved to dismiss Vallante's and Allan's claims for improper venue, or alternatively, to transfer venue to the Southern District of Ohio. ("Mot.," Dkt. No. 31.) Plaintiffs opposed Abercrombie's motion on April 19, 2016. ("Opp.," Dkt. No. 34.) On May 9, 2016, Defendants filed a reply memorandum in support of their motion. ("Reply," Dkt. No. 35.)

## II. CLAIM SPLITTING

Defendants move for judgment on the pleadings as to Bojorquez's Clothing and Footwear claim for improper claim splitting on the grounds that she is already a

class member in another lawsuit against Abercrombie wherein she is asserting the same factual allegations as those in her Clothing and Footwear claim. (Mot. at 12-14.) Plaintiffs oppose. (Opp. at 8-18.)

## A. Related Cases

There are currently five actions pending before this Court—including this one—which allege various wage-and-hour violations against Abercrombie.[1] None of the named Plaintiffs in this action are named Plaintiffs in the other four actions. However, in one of the related cases, Alexander Brown et al. v. Abercrombie & Fitch Co. et al., No. CV 14–1242 JGB (VBKx), ("Brown"), Plaintiff Bojorquez submitted a declaration in support of a motion to certify certain subclasses. ("Bojorquez Decl.," Dkt. No. 73 at 81 in CV 14-1242 JGB (VBKx).) The motion sought to certify four subclasses of plaintiffs, each of which is based on allegations that Abercrombie improperly requires its employees to purchase Abercrombie-brand clothing and footwear without reimbursement. (See "Brown July 16, 2015 Order," Dkt. No. 108 in CV 14-1242 JGB (VBKx).)

In her declaration, Bojorquez provided detailed information regarding Abercrombie's "Look Policy." (Bojorquez Decl. ¶¶ 13-26.) The Look Policy requires Abercrombie employees to wear clothes during their shifts that match Abercrombie's styles—styles which are set out in the "AAA Style Guide." (Id. ¶¶ 13-14.) The AAA Style Guide, which is issued every 2-3 months, features clothes that Abercrombie employees are required to buy for each season. (Id. ¶ 15.) Bojorquez stated that she felt compelled to purchase new Aber-

crombie clothes every time the AAA Style Guide came out and was reprimanded on at least one occasion for not wearing Abercrombie-brand jeans. (Id. ¶¶ 18-19.) She declared that she had to use a "large percentage" of her pay to buy Abercrombie-brand clothing "so that [she] can be sure that [she] will continue to be scheduled to work." (Id. ¶ 24.) Finally, she declared, "I would like this case to be certified as a class action so that I do not have to bear the costs and burden of prosecuting these claims against Abercrombie." (Id. ¶ 27.)

On July 16, 2015, the Court granted the Brown plaintiffs' motion to certify the four subclasses. (Brown July 16, 2015 Order at 27.) The Court found the subclasses satisfy the requirements of Federal Rule of Civil Procedure[2] 23(a) and 23(b)(3). (Id.) These subclasses, which are premised on alleged violations of various sections of the California Labor Code and applicable Wage Orders, include "[a]ll persons who were employed in California as non-exempt, hourly employees" at Abercrombie after September 16, 2009 and who purchased AAA clothing, Abercrombie clothing, or Abercrombie footwear during their employment after that date. (Id. at 27-28.) The second subclass includes an additional limitation—it includes only those Abercrombie employees that earn no more than minimum wage. (Id. at 28.) The theory behind this subclass is that the alleged policy of coercing employees earning minimum wage into purchasing AAA clothing resulted in net wages falling below the minimum wage and thus violated California's minimum wage laws. (Id. at 11.)

---

1. These actions are: Alexander Brown et al. v. Abercrombie & Fitch Co. et al., No. CV 14–1242 JGB (VBKx); Samantha Jones v. Abercrombie & Fitch Trading Company, No. CV 15–105 JGB (Ex); Marcia Garcia v. Hollister Co. et al., No. CV 16–154 JGB (AGRx); and

Benjamin Lagunas et al. v. Abercrombie & Fitch Co. et al., SACV 16-199 JGB (DFMx).

2. Unless otherwise noted, all references to "Rule" shall be to the Federal Rules of Civil Procedure.

Several months later, on December 15, 2015, Bojorquez filed her complaint in the instant action seeking to certify a collective action pursuant to the FLSA for all persons employed in the United States by Abercrombie as non-exempt, hourly, non-management employees from three years prior to the filing of this action through the trial date. (Complaint ¶ 64, Dkt. No. 1; see also FAC ¶ 63.) Bojorquez "seeks relief on a collective basis challenging Abercrombie's forced clothing and footwear purchases, which result in wage kick-backs and improper deductions from wages for Abercrombie's benefit, thereby pushing the wages of the FLSA Class below the legal minimum." (Id. ¶ 66; see also FAC ¶ 65.)

**B. Legal Standard**

 The doctrine of claim-splitting embodies the notion that a party is "not at liberty to split up his demand, and prosecute it by piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fail. There would be no end to litigation if such a practice were permissible." United States v. Haytian Republic, 154 U.S. 118, 125, 14 S.Ct. 992, 38 L.Ed. 930 (1894) (quoting Stark v. Starr, 94 U.S. 477, 482, 24 L.Ed. 276 (1876)). The ultimate objective of this rule against claim-splitting is to "protect the Defendant from being harassed by repetitive actions based on the same claim" and to promote judicial economy and convenience. Clements v. Airport Auth. of Washoe Cnty, 69 F.3d 321, 328 (9th Cir.1995); Restatement (Second) of Judgments § 24.

 Plaintiffs have "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant." Adams v. California Dep't of Health Servs., 487 F.3d 684, 688 (9th Cir.

2007), overruled on other grounds by Taylor v. Sturgell, 553 U.S. 880, 904, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). "After weighing the equities of the case, the district court may exercise its discretion to dismiss a duplicative later-filed action, to stay that action pending resolution of the previously filed action, to enjoin the parties from proceeding with it, or to consolidate both actions." Id. Courts apply an analysis similar to a claim preclusion analysis and thus "must assess whether the second suit raises issues that should have been brought in the first." Id. at 689 (citation omitted). The most important criterion in determining whether the two actions are the "same" is "'whether the two suits arise out of the same transactional nucleus of facts.'" Id. at 689 (quoting Costantini v. Trans World Airlines, 681 F.2d 1199, 1201–02 (9th Cir.1982).)

**C. Discussion**

 There are two aspects to the affirmative defense of claim splitting. First, Defendants must show that the parties are the same; second, Defendants must show that the successive causes of action are the same. See Adams, 487 F.3d at 689 ("in assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same").

**1. Bojorquez is a Party to the Brown Action**

 "For the rule against claim splitting to apply, the parties to the subsequent action must be the same as or in privity with the parties in the prior action." Beckerley v. Alorica, Inc., No. SACV 14–0836–DOC, 2014 WL 4670229, at *4 (C.D.Cal. Sept. 17, 2014). Here, Bojorquez is not a named Plaintiff in Brown. That does not end the inquiry, however, because Bojorquez is a member of the certified Brown

subclasses. The question, then, is whether Bojorquez's status as a member of the certified Brown subclasses qualifies her as a "party" to the Brown action for purposes of the claim splitting doctrine. Cook v. C.R. England, Inc., No. CV 12–3515–GW CWX, 2012 WL 2373258, at *5 (C.D.Cal. June 21, 2012) ("The appropriate question is whether [the plaintiff], as an individual plaintiff in both [class] actions, is bringing claims that are impermissibly duplicative.") (emphasis in original). The Court concludes that it does.

■ Borrowing from the doctrine of claim preclusion, the Court relies on the Supreme Court's reasoning in Richards v. Jefferson County, Ala., 517 U.S. 793, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996) and Taylor v. Sturgell, 553 U.S. 880, 894, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008). In Richards, the Court explained that there is a recognized exception to the general rule that nonparties may not be bound by judgments in prior cases: "in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." 517 U.S. at 798–99, 116 S.Ct. 1761. (citing Hansberry v. Lee, 311 U.S. 32, 41–42, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). A party's representation of a nonparty is "adequate" for preclusion purposes if, at a minimum: "(1) the interests of the nonparty and her representative are aligned; and (2) either the party understood herself to be acting in a representative capacity or the original court took care to protect the interests of the nonparty." Taylor, 553 U.S. at 900, 128 S.Ct. 2161

(citations omitted). "In addition, adequate representation sometimes requires (3) notice of the original suit to the persons alleged to have been represented." Id. "In the class-action context, these limitations are implemented by the procedural safeguards contained in Federal Rule of Civil Procedure 23." Id. at 901, 128 S.Ct. 2161. Accordingly, "[r]epresentative suits with preclusive effect on nonparties include properly conducted class actions." Id. at 894, 128 S.Ct. 2161.

■ Bojorquez does not dispute that she qualifies as a member of the Brown subclasses. However, she cites Smith v. Bayer Corp., 564 U.S. 299, 315, 131 S.Ct. 2368, 180 L.Ed.2d 341 (2011), for the proposition that "a nonparty is not represented in a class action, adequately or otherwise, unless a class is certified and the nonparty declines to opt-out." (Opp. at 10.) Bojorquez misstates Smith. Smith makes no mention of the requirement that "the nonparty [must] decline to opt out" in order to be represented in that class action. Rather, it unequivocally states that "a class action approved under Rule 23" binds nonparties who qualify as members of that class. Smith, 564 U.S. at 315, 131 S.Ct. 2368 ("Neither a proposed class action nor a rejected class action may bind nonparties. What does have this effect is a class action approved under Rule 23."). That is what Brown is. This Court approved four subclasses in Brown pursuant to Rule 23(a) and 23(b)(3), classes of which Bojorquez is a member. (Brown July 16, 2015 Order at 27.) Accordingly, the Court considers Bojorquez a "party" of the Brown action.[3]

---

**3.** Bojorquez makes several other arguments in support of her claim that she is not a party to Brown, none of which have merit. (Opp. at 10-13.) First, it is irrelevant that Defendants may move to decertify the Brown classes; all that matters is that this Court found that the classes satisfy Rule 23. Smith, 564 U.S. at 315, 131 S.Ct. 2368. Second, Bojorquez argues that the Brown plaintiffs cannot adequately represent her because she is bringing an FLSA collective action, which requires plaintiffs to affirmatively "opt in" to the class, rather than a Rule 23 class, which generally operates under an "opt out" method. (Opp. at 12-13.) This argument makes little sense. Bojorquez does not dispute that the Brown plaintiffs are familiar with the facts underlying that case—which are the same set of facts

## 2. Bojorquez's FLSA Claim is the "Same" as Claims Raised in Brown

To ascertain whether successive causes of action are the same, the Ninth Circuit uses the transaction test, developed in the context of claim preclusion. Adams, 487 F.3d at 689. "Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together." Western Sys., Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir.1992) (citing Restatement (Second) of Judgments § 24(1) (1982)). In applying the transaction test, the Ninth Circuit examines four criteria: (1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts. Costantini v. Trans World Airlines, 681 F.2d 1199, 1201–02 (9th Cir. 1982). "The last of these criteria is the most important." Id. at 1202.

The fourth factor is met here. The claims in Brown arise out of the same facts as Bojorquez's FLSA claim: whether and to what extent Abercrombie forced or coerced its employees into buying Abercrombie clothing and footwear without reimbursing its employees. (Compare Brown July 16, 2015 Order at 17 ("Plaintiffs . . . set forth common questions based on an asserted policy or practice of coercing store employees to purchase AAA clothing

and have provided evidence supporting the existence of that common practice or informal policy . . .") with FAC ¶ 5 ("By common policy, Abercrombie requires its employees to purchase and wear Abercrombie clothing with their own funds and without reimbursement.").) Bojorquez contends that the facts at issue in this action are different because in its Answer to the FAC, Abercrombie claims that it no longer has a Look Policy. (Opp. at 17.) This asserted defense does not alter the analysis. Rather, it supports the fact that the two suits arise out of the same transactional nucleus of facts because it reaffirms that the central issue in both cases is whether and to what extent Abercrombie maintains a policy requiring its employees to buy Abercrombie clothing without reimbursement. "This subsequent action arises from the same transaction, or series of transactions as the original action and therefore satisfies the [fourth] criterion." Mpoyo v. Litton Electro–Optical Sys., 430 F.3d 985, 987 (9th Cir.2005) (citation omitted).

The first factor asks whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action. This factor is met because the Court's factual findings Brown regarding whether Abercrombie employed a policy or practice of coercing employees to buy Abercrombie clothing without reimbursement will likely have issue preclusive effect on any FLSA class certified in this action. See Beckerley, 2014 WL 4670229 at *6 (finding the second factor met where the court's findings regarding certain claims in the first-filed suits

underlying Bojorquez's claim here. It may be the case, as the court in Beckerley indicated, that an FLSA named plaintiff does not adequately represent the interests of a class action plaintiff suing on state law claims, see 2014 WL 4670229 at *6, but that does not mean the reverse is true. Rather, as the Court explains in more detail below, the fact that

the Brown action is a state law class action indicates that it protects rights above and beyond those at issue in an FLSA action. Additionally, counsel representing the Brown plaintiffs represents Bojorquez in this suit. As such, the Court finds Bojorquez's arguments meritless. She is party to the Brown action.

"may have issue preclusive effects on" the issues raised in Beckerley).

The other criteria do not as clearly dictate whether Brown arises out of the same claim or transaction. The second factor asks whether the two actions require substantially the same evidence. Bojorquez contends that the evidence presented in this case will be different that than presented in Brown because Bojorquez seeks to represent a national class and Brown is limited to a California state-wide class. (Opp. at 14-15.) However, Bojorquez concedes that several key pieces of evidence—Abercrombie's handbooks and Style Guides—will be the same in both suits, and any evidence specific to Bojorquez will also be the same. Bojorquez also concedes that all of the evidence presented in Brown will be presented in this case.

The third factor asks whether the two suits involve infringement of the same right. In both cases, Bojorquez seeks redress for Abercrombie's purported unlawful mandate that she use her wages to buy Abercrombie clothes. So in one sense, the wrong to be redressed in both cases is the same. However, the methods of proof under the different statutory schemes may differ. For example, Plaintiff contends that the definition of "uniform" for purposes of the FLSA claim and the California Labor Code differ. The California Labor Code regulations define "uniform" as "wearing apparel and accessories of distinctive design or color." Cal. Code Regs. tit. 8, § 11070(9)(A). Analyzing an issue of apparent first impression, a district court defined "distinctive design and color" to mean of a "specified color or design, or both, that is not usual or common within the employee's occupation." Becerra v. Ra-

dioShack Corp., No. 4:11–CV–03586 YGR, 2012 WL 6115627, at *5 (N.D.Cal. Dec. 10, 2012). The Department of Labor Field Operations Handbook, Chapter 30, part c12(f), states that "there are no hard-and-fast rules in determining whether certain types of dress are considered uniforms," but two principles are applicable: (1) "If an employer merely prescribes a general type of ordinary basic street clothing to be worn while working and permits variations in details of dress, the garments chosen by the employees would not be considered to be uniforms"; and (2) "On the other hand, where the employer does prescribe a specific type and style of clothing to be worn at work, e.g., where a restaurant or hotel requires a tuxedo or a skirt and blouse or jacket of a specific or distinctive style, color, or quality, such clothing would be considered uniforms." See Opinion Letter Fair Labor Standards Act (FLSA), 1978 WL 51404, at *1. Although this Court does not see any immediate distinction between the two definitions, it is possible that the different standards could produce different results.

More significantly, however, the Court notes that the potential compensatory relief afforded to Bojorquez in Brown would match or exceed that available to her in the FLSA action. This is because the California Labor Code provides several different avenues of recovery, whereas the FLSA action only permits recovery if Bojorquez proves that Abercrombie's employment practices pushed her wages below the federal minimum wage of $7.25 per hour. See 29 U.S.C. § 206(a)(1)(C). The Brown plaintiffs are pursuing this theory as well, but under California law where the minimum wage was $8.00 in 2008, $9.00 in 2014, and $10.00 starting January 1, 2016.[4]

4. See "History of California Minimum Wage," Industrial Welfare Commission, State of California Department of Industrial Relations, http://www.dir.ca.gov/iwc/minimumwagehistory.htm (accessed June 15, 2016). See Daniels–Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir.2010) (taking judicial notice of information publicly available on government websites).

The Brown plaintiffs are also seeking recovery under a different theory, pursuant California Labor Code § 450, which prohibits employers from compelling or coercing employees to patronize their employer or any other person, in the purchase of anything of value. Cal. Labor Code § 450(a). The third and fourth subclasses, brought pursuant to California Labor Code § 2802, seek indemnification for the purchase of Abercrombie clothing and shoes. Although some of these theories are proposed as alternatives—i.e., recovery by multiple subclasses could constitute double recovery—the legal arguments are different and provide the plaintiffs with an opportunity to recover under one theory if another fails. This is an option Bojorquez does not have in her FLSA claim. Moreover, the Brown classes also provide recovery under three of their four subclasses even if the plaintiffs cannot prove that the purchases of Abercrombie clothing forced their wages below the minimum wage. Thus, Bojorquez can seek full compensatory recovery, and perhaps more, by pursuing the Brown action.

While examination of the latter two criteria does not yield a conclusive outcome, Brown clearly shares a common nucleus of operative facts under the fourth criterion. This "criterion controls and assures the two suits involve the same claim or cause of action." Mpoyo, 430 F.3d at 988 ("We have often held the common nucleus criterion to be outcome determinative under the first res judicata element."); see also Int'l Union v. Karr, 994 F.2d 1426, 1429–30 (9th Cir.1993) (holding criterion to be outcome determinative and listing cases using the same nucleus of operative fact as the exclusive factor to bar a second claim under claim preclusion).

Because Bojorquez is a party and class member in Brown, and because Brown and Bojorquez's FLSA claim "are part of the same transaction or series," the Court finds that the FLSA claim violates the claim splitting doctrine. This claim is therefore DISMISSED WITH PREJUDICE. Adams, 487 F.3d at 692 ("Dismissal of the duplicative lawsuit, more so than the issuance of a stay or the enjoinment of proceedings, promotes judicial economy and the comprehensive disposition of litigation") (citation omitted).

## III. SEVERANCE

The following claims remain: Bojorquez's six Reporting Time causes of action, (FAC ¶¶ 117-159), Vallante's three Clothing and Footwear claims, (id. ¶¶ 89-105), and Allan's two Clothing and Footwear claims, (id. ¶¶ 106-116.) Defendants move to sever Bojorquez's Reporting Time claims from Allan's and Vallante's Clothing and Footwear claims on the following grounds: the claims do not arise out of the same transaction or occurrence; they do not present common questions of law or fact; they would require the presentation of different evidence; and they are already the subject of other putative class actions pending before this Court. (Mot. at 8-12.) Plaintiffs oppose. (Opp. at 2-8.)

### A. Legal Standard

Under Federal Rule of Civil Procedure 20(a), persons may join in one action as plaintiffs if (1) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all plaintiffs will arise in the action. See Fed. R. Civ. P. 20(a)(1); see also Rush v. Sport Chalet, Inc., 779 F.3d 973, 974 (9th Cir. 2015). Even if these requirements are met, a district court must examine whether permissive joinder would "comport with the principles of fundamental fairness or would result in prejudice to either side." Coleman

v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir.2000).

 Under Rule 21, misjoinder of parties is not a ground for dismissing an action with prejudice, but "if plaintiffs fail to meet the standard for permissive joinder, the district court may sever the misjoined plaintiffs, as long as no substantial right will be prejudiced by the severance." Visendi v. Bank of Am., N.A., 733 F.3d 863, 870–71 (9th Cir.2013) (citing Coughlin v. Rogers, 130 F.3d 1348, 1351 (9th Cir. 1997). In appropriate cases, courts can remedy misjoinder by dismissing the claims of the misjoined plaintiffs without prejudice to those plaintiffs filing separate actions. Id.

## B. Discussion

To meet the first requirement of permissive joinder, Plaintiffs' claims must arise from "the same transaction, occurrence, or series of transactions or occurrences...." Fed. R. Civ. P. 20(a)(1)(A). "By its terms, this provision requires factual similarity in the allegations supporting Plaintiffs' claims." Visendi, 733 F.3d at 870. No such factual similarity exists here. The FAC demonstrates this in as much as it separates the "Factual Allegations" section into facts relating to the Clothing and Footwear claims and facts relating to the Reporting Time claims. (Compare FAC ¶¶ 30-41 with 42-43.) As previously stated, the Clothing and Footwear claims allege that Abercrombie had a policy and practice of forcing or coercing its employees to buy and wear Abercrombie-brand clothes and shoes without reimbursing the employees for the cost. (Id. ¶ 35–41.) By contrast, the Reporting Time claims allege that Abercrombie schedules its employees for "call-in" shifts where employees are required to call their store one hour before the start of each call-in shift to find out whether they have to report for the length of the scheduled call-in shift. (Id. ¶ 42.) These allegations contain little, if any factual similarity.

Plaintiffs contend that there is factual similarity here because the Reporting Time Claims and the Clothing and Footwear Claims "are generated by the conduct of the same employer, by implementation of the same policy document (Abercrombie's employee handbook), with respect to employees occupying the same job positions, resulting in the same type of harm (failure to pay wages), as part of an overarching pattern or practice of failing to pay wages by complimentary mechanisms working in tandem." (Opp. at 6.) This is insufficient. Simply because there are some factual similarities among the Plaintiffs does not mean that those similarities are material to the claims alleged. The facts required to prove the Reporting Time claims—that Abercrombie required its employees to be available to work without any reciprocal promise that they would be allowed to work or without payment for that reporting time—are entirely different from the facts that will be required to prove the Clothing and Footwear claims. "Factual disparities of the magnitude alleged are too great to support permissive joinder." Visendi, 733 F.3d at 870. It is therefore minimally relevant that each of the Plaintiffs occupied the same job positions or were employed by the same employer. See Padron v. Onewest Bank, No. 2:14-CV–01340–ODW, 2014 WL 1364901, at *3 (C.D.Cal. Apr. 7, 2014) ("This general theme will do little to advance each individual claim if the action were to proceed as is.").

Nor do Plaintiffs' claims present "any question of law or fact common to all plaintiffs..." Fed. R. Civ. P. 20(a)(1)(B). Plaintiffs contend that the two types of claims "present several common questions, including whether Abercrombie's hand-

book contains its policies, whether all policies contained in the handbook are enforced, by whom and according to what criteria employees' schedules are made, the job duties of Abercrombie employees, and whether employees are scheduled for call-in shifts if they fail to purchase AAA clothing." (Opp. at 7.) This is insufficient. As stated above, these purported common questions of fact are too minimal to establish any meaningful link between the two types of claims.

Moreover, Plaintiffs fail to identify a single common legal question between the two types of claims. The Clothing and Footwear claims are brought under Massachusetts and Florida law, whereas the Reporting Time claims are brought under California law. The legal issues, standards, and procedures involved in the Clothing and Footwear claims are different from those involved in the Reporting Time claims. Coughlin, 130 F.3d at 1351 (finding claims did not involve common questions of law or fact where each of the claims was discrete and involved "different legal issues, standards, and procedures"). "Indeed, even if Plaintiffs' cases were not severed, the Court would still have to give each claim individualized attention." Id.; see also Padron, 2014 WL 1364901 at *3 ("Defendants—and subsequently the Court—will have to wade through the factual thicket of each Plaintiff's own situation to determine the merits of their claims"). The Ninth Circuit has found severance warranted where Plaintiffs "merely allege[d] that Defendants violated the same laws in comparable ways." Visendi, 733 F.3d at 870. Here, Bojorquez is alleging Abercrombie violated completely different laws based on entirely different fact patterns. For these reasons, Bojorquez's

Reporting Time claims should not be joined with Vallante's and Allan's Clothing and Footwear claims.

This finding is further supported by the fact that severance will not prejudice Bojorquez, as she "remains free to pursue [these] claims individually." Visendi, 733 F.3d at 871. Any contention that Bojorquez is prejudiced due to the applicable statutes of limitations on her claims is unpersuasive.[5] There are at least two other putative class action cases pending before this Court which were filed before the instant case, which include the same Reporting Time claims against Abercrombie as Bojorquez alleges, and in which Bojorquez would qualify as a putative class member. (See Samantha Jones et al. v. Abercrombie & Fitch Trading Company, No. CV 15–105 JGB (Ex), Dkt. No. 44 ¶ 12; Benjamin Lagunas et al. v. Abercrombie & Fitch Co. et al., No. 16–199 JGB (DFMx), Dkt. No. 1–1 ¶¶ 31, 32.) As such, Bojorquez may join either of those actions to recover compensatory and other damages for her Reporting Time claims.

Accordingly, Bojorquez's Reporting Time claims—causes of action six through twelve (FAC ¶¶ 117-159)—are DISMISSED WITHOUT PREJUDICE to Bojorquez pursuing those claims individually. Visendi, 733 F.3d at 871.

## IV. VENUE

The claims remaining are: three causes of action alleging violations of Massachusetts law brought by Vallante, the Massachusetts Class Representative, on behalf of himself and others similarly situated, (FAC ¶¶ 68, 89-105); and two causes of action alleging violations of Florida law brought by Allan, the Florida Class Repre-

---

**5.** Should Bojorquez re-file her Reporting Time claims in a separate action, she may be prejudiced due to the three-year statute of limitations for unpaid wages. Cal. Code Civ. Proc. 338(a). Bojorquez began working with Abercrombie in December 2012. (FAC ¶ 18.) This case was filed December 15, 2015.

sentative, on behalf of himself and others similarly situated, (id. ¶¶ 69, 106-116). Defendants move to dismiss Vallante's and Allan's claims for improper venue on the grounds that Abercrombie does not reside in this district and neither Vallante's nor Allan's claims arise out of events that occurred in this district. (Mot. at 14-18.) Alternatively, Defendants move to transfer venue to the Southern District of Ohio, the district in which Defendants reside. (Id. at 18-25.) Plaintiffs oppose. (Opp. at 18-25.)

## A. Legal Standard

Under Rule 12(b)(3), a defendant may raise the defense of improper venue in a motion to dismiss. Fed. R. Civ. P. 12(b)(3). Venue in federal courts is governed entirely by statute. See Leroy v. Great Western United Corp., 443 U.S. 173, 181, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979). Under 28 U.S.C. § 1391(b), venue is proper in any judicial district in which any defendant rises or any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

■■■■ For purposes of venue, a defendant corporation is deemed to reside in any judicial district in which it is subject to that court's personal jurisdiction with respect to the civil action in question. 28 U.S.C. § 1391(c)(2). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir.2004) (citing International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. Daimler AG v. Bauman, — U.S. —, 134 S.Ct. 746, 754, 187 L.Ed.2d 624 (2014). Specific jurisdiction is

satisfied when activities of the corporate defendant are directed toward the forum statute and the defendant's liability arises out of or relates to those activities. Id. By contrast, general jurisdiction is only satisfied where the corporation's affiliations with the forum state "are so continuous and systematic as to render it essentially at home." Id. at 761.

If venue is improper, the district court can either dismiss the case, or if it be in the interest of justice, transfer the case to any district where it could have been brought. 28 U.S.C. § 1406(a).

## B. Discussion

### 1. Venue is Improper in this District

■■■ Defendant Abercrombie & Fitch Co. is a Delaware Corporation with its principal place of business in Ohio. (FAC ¶ 16.) Defendant Abercrombie & Fitch Stores, Inc. is an Ohio corporation with its principal place of business in Ohio. (Id. ¶ 17.) The only claims remaining in this case relate to alleged conduct in Massachusetts and Florida. (Id. ¶¶ 89-116.) Because no claims remain which allege wrongful conduct occurring in the Central District of California, venue can only be proper here if Abercrombie is subject to this Court's general jurisdiction. See 28 U.S.C. § 1391(b), (c)(2); see also Daimler AG, 134 S.Ct. at 754. Defendants argue that Abercrombie is not subject to the personal jurisdiction of this Court with respect to Vallante's and Allan's claims. (Mot. at 15.) For the following reasons, the Court agrees.

The Supreme Court has recently clarified that, with respect to national and international companies, general jurisdiction over corporate defendants is not satisfied even when a corporation "engages in a substantial, continuous, and systematic course of business" in the forum state. Daimler AG, 134 S.Ct. at 761. This formu-

lation "is unacceptably grasping." Id. Rather, it is only when the corporation's "affiliations with the state are so continuous and systematic as to render it essentially at home." Id. This is satisfied where the corporation is incorporated in the forum state or has its principal place of business there. Id. This may also be satisfied where a corporation's contacts with the forum state are such that they form a significant portion of that corporation's business as a whole, which would entail "an appraisal of a corporation's activities in their entirety, nationwide and worldwide." Id. at 762, n. 20.

Abercrombie has 964 stores worldwide. (Declaration of Andrew Wheeler ¶ 5 ("Wheeler Decl."), Dkt. No. 31–2.) Only 58 of these stores are located in the Central District of California. (Id.) Of Abercrombie's 49,610 employees worldwide, only 3,046 employees work in this district. (Id. ¶ 6.) From December, 15, 2012 through December 15, 2015, Abercrombie employed approximately 296,646 non-exempt, hourly employees in the United States. (Id. ¶ 7.) Only 42,246 of those employees worked in California. (Id.) The Court does not find these activities sufficient to render Abercrombie "essentially at home" here. This is the situation the Supreme Court envisioned in Daimler AG: a corporate defendant's activities in a forum—even where the corporation's sales in that forum are "sizable" and where that corporation's contacts with the forum can be said to be "continuous and systematic"—should not give rise to personal jurisdiction because "[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." Daimler AG, 134 S.Ct. at 761–762. Because the Court finds Abercrombie is not "essentially at home" here, it does not have personal jurisdiction over Abercrombie with respect to Vallante's and Allan's claims; and therefore, venue is improper in this district.

### 2. Transfer to the Southern District of Ohio

■ If venue is improper, the district court can either dismiss the case, or if it be in the interest of justice, transfer the case to any district where it could have been brought. 28 U.S.C. § 1406(a). "[N]ormally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc., 793 F.3d 991, 996 (9th Cir.2015) (citations omitted). The Ninth Circuit has "rarely found that transfer would not serve the interests of justice," and such cases generally involve bad faith, time-barred, or otherwise futile claims. Id.; see also Clarke v. Aljex Software, Inc., No. 2:15–CV–01271–SU, 2015 WL 9305487, at *3 (D.Or. Dec. 1, 2015), report and recommendation adopted, No. 2:15–CV–01271–SU, 2015 WL 9305655 (D.Or. Dec. 21, 2015).

■ The Court finds that the interests of justice weigh in favor of transferring the case to a proper venue. First, there is no allegation that Vallante and Allan brought their claims in bad faith or that their claims are futile. Second, transfer to an appropriate district will spare Vallante and Allan the delay and expense involved in re-filing this action and re-serving Defendants and will protect any rights either may lose by way of applicable statutes of limitations in filing a new action over seven months after the initiation of this action. See Johnson v. Law, 19 F.Supp.3d 1004, 1010 (S.D.Cal.2014) (transferring a case to a proper district where venue was improper "to spare [plaintiff] the delay and expense involved in refiling this action and re-serving Defendants"). To that end, the Court finds that this action could have

been brought in the Southern District of Ohio—the district in which Defendants reside. (See Mot. at 19.) Moreover, Abercrombie's "Home Office" is in that district, which houses the individuals who "create, develop, maintain, implement and enforce Abercrombie's policies." (Wheeler Decl. ¶ 4.) Accordingly, the Court finds that transfer to the Southern District of Ohio is appropriate under Section 1406(a).

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion, (Dkt. No. 31):

1. The first cause of action for violation of the Fair Labor Standards Act brought by Plaintiff Alma Bojorquez on behalf of herself and others similarly situated is DISMISSED WITH PREJUDICE for improper claim splitting.

2. The seventh, eighth, ninth, tenth, eleventh, and twelfth causes of action for violations of the California Labor Code for Abercrombie's failure to pay reporting time pay (the Reporting Time causes of action) are DISMISSED WITHOUT PREJUDICE as improperly joined with the Clothing and Footwear causes of action.

3. The second, third, fourth, fifth, and sixth causes of action brought by Plaintiffs Jake Vallante and Matthew Allan are hereby TRANSFERRED to the Southern District of Ohio for further proceedings.

The June 20, 2016 hearing is VACATED.

**IT IS SO ORDERED.**